**Richard W. STOOPS, Plaintiff–Appellant,**

v.

**ONE CALL COMMUNICATIONS, INCORPORATED, Defendant–Appellee.**

**No. 97–1895.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1997.

Decided March 31, 1998.

William R. Groth (argued), Fillenwarth, Dennerline, Groth & Towe, Indianapolis, IN, for Plaintiff–Appellant.

Philip J. Ripani (argued), Henderson, Daily, Withrow & Devoe, Indianapolis, IN, for Defendant–Appellee.

Before EASTERBROOK, MANION, and EVANS, Circuit Judges.

MANION, Circuit Judge.

Richard Stoops sued his former employer, One Call Communications, Inc., under the Family and Medical Leave Act of 1993 (FMLA), 29 U.S.C. § 2601, *et seq.*, after One Call fired Stoops for excessive absences. At one point One Call had placed Stoops on FMLA leave but after his doctor certified that Stoops did not qualify for FMLA leave, One Call required Stoops to return to work. After returning, when he incurred additional absences, One Call denied him FMLA leave that he requested. Stoops quickly exceeded the number of absences permitted under One Call's no-fault attendance policy, prompting his discharge. The central issue here is whether One Call, when denying Stoops FMLA leave, could rely on Stoops' physician's earlier certification that he was not qualified for FMLA leave. The district court granted summary judgment for One Call and we affirm.

## I. Facts

Because this appeal comes to us on summary judgment, we relate the facts in the light most favorable to Stoops. (There are few factual disputes in the record and none of them is material.) One Call is a long distance telephone service provider. Stoops worked in One Call's Carmel, Indiana, office. For the first few years of his employment, Stoops apparently had no significant attendance problems and was promoted numerous times culminating in his promotion to switchroom technician in November 1994. About a month prior to this last promotion, Stoops began to suffer health problems, although they initially did not affect his attendance. Stoops' symptoms included passing out, confusion, light-headedness, nausea, headaches, and chest pains, all of which apparently contributed to problems with motor functions and sleeping difficulties.

Beginning in February 1995, Stoops began missing work, but he had accumulated enough sick days that he was able to take time off and still be paid. At this time he complained that his medical problems were interfering with his duties as switchroom technician, which required him to be on call 24 hours per day. To alleviate this, he requested that he be transferred to his prior position as a supervisor in the operations center. One Call accommodated Stoops and complied with his request, but his absences continued. In June 1995, Stoops' physician, Dr. Richard Anderson, diagnosed Stoops as suffering from neurocardiogenic syncope, commonly called "chronic fatigue syndrome." Dr. Anderson prescribed various medications to treat this condition.

On June 19, 1995, Stoops' direct supervisor, Kathryn Legg, sent a memorandum regarding Stoops' absences to her supervisor, Diane Dabicci. Legg related Stoops' numerous attendance problems, including not calling in to notify One Call that he would be absent until minutes before he was scheduled to begin work, leaving early, coming in late, and taking excessively long lunch hours. Legg apparently thought that Stoops' condition would qualify him for leave under the FMLA. But she commented, "I realize that with FMLA [Stoops] could take his intermittent leave over many weeks, but if he does so, it will hurt morale and center functions . . . . we don't have to allow the intermittent leave unless we find that it is 'medically necessary,' right?" Shortly thereafter, Legg wanted Stoops to go on full-time FMLA leave. He eventually agreed and went on leave beginning July 24, 1995. Legg gave Stoops two standard forms promulgated by

the Secretary of Labor: Form WH–381, which notified him that he was being placed on FMLA leave and instructed him "to furnish medical certification of a serious health condition," and Form WH–380, which was the requested medical certification for his physician to complete.

On August 11, 1995, Stoops returned the completed Form WH–380 to One Call. Dr. Anderson indicated that Stoops suffered from a chronic serious health condition but that he was not presently incapacitated and would not have to work intermittently or on a reduced work schedule. As we shall see, this meant that Stoops was not qualified for FMLA leave. So One Call instructed him to return to work, which he did on August 18, 1995. Although Dr. Anderson had certified Stoops as not qualified for FMLA leave, One Call counted all of Stoops' absences in June, July, and August as FMLA leave. (It was not permitted to do this, but that is not an issue in this appeal.) On his return, Legg counseled Stoops that because Dr. Anderson had indicated he was not qualified for FMLA leave, all future absences would count against him under One Call's no-fault attendance policy. Beginning on the next day, Stoops accumulated 12 absences in the next four weeks. (The record is not clear as to exactly how many days Stoops was scheduled to work in that time, but it appears that he was absent more than he was at work.) For most of the days he was absent, Stoops notified One Call that he would be out due to his chronic fatigue syndrome. Some of the absences were for doctor's appointments and one absence was due to car trouble. Nevertheless these twelve absences were enough to fire Stoops under One Call's no-fault attendance policy.[1]

September 12, 1995, was the first day that Stoops returned to work after he accumulated enough absences to be fired. On that day, Dabicci and Legg met with Stoops and offered him the choice of resigning or being fired; Stoops would not resign, so he was fired.[2] To justify firing Stoops, One Call relies only on those absences after Stoops returned from leave on August 18. The record also suggests that One Call was unhappy with Stoops' performance when he was present and counseled him on his numerous shortcomings. However, because One Call relies solely on Stoops' excessive absences, his job performance is not relevant to our decision.

Stoops filed this suit on December 1, 1995, claiming that One Call violated the FMLA by firing him under the no-fault attendance policy without seeking another physician's certification. The district court granted summary judgment for One Call on February 20, 1997, and Stoops timely appealed.

## II. Analysis

We begin our analysis by outlining the FMLA's provisions and the regulations that the Secretary of Labor has promulgated under it, as directed by 29 U.S.C. § 2654. Neither party challenges the propriety of the regulations, so we accept for purposes of this decision that they are legitimate and controlling under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844–45, 104 S.Ct. 2778, 2782–83, 81 L.Ed.2d 694 (1984). The final versions of the regulations effective April 6, 1995 apply to this case. *See* 60 Fed.Reg. 2180 (1995); *see also Gay v. Gilman Paper Co.*, 125 F.3d 1432, 1434 n. 4 (11th Cir.1997).

The FMLA applies to an "eligible employee," one who works a requisite number of hours, and employers that employ fifty or more people and engage in interstate com-

---

1. The FMLA would not, of course, cover leave due to car trouble, and nothing in the record suggests that it was necessary for Stoops to miss work to keep the doctor's appointments. See 29 C.F.R. § 825.115 (employee considered unable to perform essential functions of position during time where he must be absent from work to receive treatment for his serious health condition). But One Call does not quibble about which absences could or could not be covered by the FMLA. Therefore for purposes of this decision we assume that had One Call provided Stoops with FMLA leave for those days on which he missed work because of his chronic fatigue syndrome he would not have accumulated enough absences to be fired.

2. Stoops alleges that he asked Dabicci if he had any FMLA leave left, and, although he had several weeks remaining, she told him that he had none. Stoops does not rely on this error to support his FMLA claim.

merce. 29 U.S.C. § 2611(2) & (4); *Kelley v. Crosfield Catalysts*, 135 F.3d 1202, 1203 (7th Cir.1998). One Call concedes that it is a covered employer and that Stoops is an "eligible employee." An eligible employee is entitled to 12 workweeks of leave in a 12–month period for one or more of four enumerated reasons. 29 U.S.C. § 2612(a)(1). Here Stoops relies on the reason in § 2612(a)(1)(D): "a serious health condition that makes the employee unable to perform the functions of the position of such employee." To be eligible for leave under subsection (a)(1)(D), the employee must both (1) have a "serious health condition" as that term is defined by the FMLA, and (2) that condition must prevent the employee from performing his job.

As Legg alluded in her June 1995 memorandum, assuming proper notice, leave under § 2612(a)(1)(D) may be taken "intermittently or on a reduced leave schedule when medically necessary." 29 U.S.C. § 2612(b)(1); *see Price v. Marathon Cheese Corp.*, 119 F.3d 330, 333 (5th Cir.1997). The regulations recognize that some serious health conditions may be chronic, causing the employee "episodic incapacity" rather than a continuous incapacity. 29 C.F.R. § 825.114(a)(2)(iii)(C); *Marathon Cheese Corp.*, 119 F.3d at 334. FMLA-qualifying leave may not be counted against an employee under an employer's "no fault" attendance policy. 29 C.F.R. § 825.220(c).

An employer may require that leave requested under § 2612(a)(1)(D) "be supported by a certification issued by the health care provider of the eligible employee." 29 U.S.C. § 2613(a). And the employer, at its expense, may request a second opinion if it doubts the employee's health care provider. 29 U.S.C. § 2613(c). A binding third opinion must be gotten to resolve a conflict between the first and second opinions. 29 U.S.C. § 2613(d). An employer may require an employee on leave to obtain subsequent re-certifications "on a reasonable basis," 29 U.S.C. § 2613(e), although (with some exceptions) where an employee suffers from a chronic serious health condition, the employer may not request a re-certification more frequently than every 30 days. 29 C.F.R. § 825.308(a). Im-

portantly, if the requested certification indicates that the leave is not FMLA-qualifying, the employer must not designate it as FMLA leave. 29 C.F.R. § 825.208(e)(2). (One Call probably violated this regulation by continuing to designate Stoops' absences prior to August 18 as FMLA leave despite Dr. Anderson's negative certification.)

Here, Stoops' theory is that One Call violated the FMLA when it counted his post-August 18 absences against him without requesting a second medical certification from his physician. Stoops bases his argument on the concept of notice. When requesting unpaid leave, the employee need not mention the FMLA. 29 C.F.R. § 825.303(b). In fact, the employee can be completely ignorant of the benefits conferred by the Act: it is sufficient notice if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed. *Price v. City of Ft. Wayne*, 117 F.3d 1022, 1025–26 (7th Cir. 1997); *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 764 (5th Cir.1995).

Stoops argues that when he called in sick after August 18 he gave One Call sufficient notice that he needed FMLA leave to trigger a duty for One Call to investigate further and require a physician's certification if it wanted verification of his condition. When an employee provides notice that leave is needed, the employer must investigate further if it needs "additional information." 29 C.F.R. § 825.303(b). And the employer's preliminary designation of whether the requested leave is FMLA-qualifying must be based solely on information that the employee—or the employee's spokesperson if the employee is incapacitated-provides to the employer. 29 C.F.R. § 825.208(a). But this regulation does not require, as Stoops seems to argue, that the employer base its decision solely on information provided by the employee *at the time of the request for leave*; nor does the regulation prohibit an employer from basing its decision on a prior certification by the employee's physician that the employee was not qualified for FMLA leave. Thus One Call could rely on the "negative certification" that Stoops had already provided.

■ One Call does not dispute that Stoops provided it with notice that he needed FMLA leave. Rather, One Call argues that Stoops never provided it with notice that his absences were due to an FMLA-qualifying reason. The regulations require that when an employee provides notice of the need for unpaid FMLA leave, "the employee would need to state a *qualifying reason* for the needed leave." 29 C.F.R. § 825.208(a)(2) (emphasis supplied). As we have said, under 29 U.S.C. § 2612(a)(1)(D), leave is qualifying if (1) it is the result of a "serious health condition" that (2) "makes the employee unable to perform the functions" of his job. If either of these elements is not met, the employee is not entitled to FMLA leave under sub-section (a)(1)(D). Here Dr. Anderson concluded that the second element was not met, that is, Stoops' chronic fatigue syndrome did not require him to miss work. Thus when Stoops informed One Call that he was missing work because of this chronic fatigue syndrome, he was providing a "reason" but one that One Call (and Stoops) knew Dr. Anderson had concluded was not a "qualifying reason." Where the employee provides the employer with a reason for his absence that the employer, based on the physician's certification, knows is not "qualifying," the Act and the regulations place no obligation on the employer to grant the employee FMLA leave.

■ Stoops argues for a different rule because he has a *chronic* serious health condition. Based on the regulatory definition of a chronic condition, Stoops argues that Dr. Anderson's certification put One Call on notice that his condition could cause him "episodic" incapacity. Thus, Stoops reasons, when he notified One Call that he was missing work because of his chronic fatigue syndrome, this was a "presumptively" FMLA-qualifying reason. So Stoops concludes when he notified One Call of his need for leave, One Call had to give him FMLA leave or request another physician's certification if it needed more information, but in any event could not simply discharge him.[3] But this argument does not explain away Dr. Anderson's certification that Stoops' chronic condition should not require him to miss work. The rule that Stoops advocates is bottomed on the apparent assumption that his own physician was "wrong" and a subsequent certification would have contradicted the initial certification by concluding that Stoops in fact did have to miss work. But Stoops was the person most able to determine that the initial certification was "wrong" and was the person with the incentive, certainly the burden, to have it corrected. The FMLA circumscribes the employer's right to challenge a physician's certification that leave is FMLA-qualifying, *see* 29 U.S.C. § 2613, but nothing in the Act or regulations limits the employee's ability to produce a medical opinion that contradicts a prior negative certification originally provided by the employee. Stoops knew that One Call was relying on Dr. Anderson's negative certification and knew that his continued absences would lead to his being fired under the no-fault attendance policy. But Stoops did nothing to obtain a contrary opinion, either from Dr. Anderson or from another physician. Where an employer like One Call requests from the employee and receives a physician's certification that indicates that an employee's serious health condition does not require him to miss work, the employer may rely on that certification until the employee provides a contradictory medical opinion.

Stoops' FMLA claim fails because he did not obtain a medical opinion to contradict Dr. Anderson's certification to show One Call that his requested leave was for a "qualifying reason" under the FMLA. In fact, even at the later litigation stage he did not obtain a contrary opinion to oppose One Call's motion for summary judgment. But even had he presented such an opinion to oppose the motion, One Call would still have been entitled to summary judgment because the Act and regulations only require the employer to provide leave (or investigate further) if the em-

---

3. At oral argument, Stoops' counsel suggested that because Stoops had a chronic serious health condition, One Call could not request a new certification for at least 30 days absent some changed circumstances. *See* 29 C.F.R. § 825.308. We need not reach this issue because we have concluded that One Call had no obligation to request another physician's certification and could rely on Dr. Anderson's initial certification.

ployee gives notice of a "qualifying reason." Stoops did nothing to contradict Dr. Anderson's certification so he did not give One Call notice that his chronic fatigue syndrome was such a "qualifying reason." The time for Stoops to have acted was when One Call notified him that it was relying on Dr. Anderson's negative certification and that his future absences would count against him.[4] Where an employer properly requests a physician's certification under the FMLA and that certification indicates the employee is not entitled to FMLA leave, the employer does not violate the FMLA by relying upon that certification in the absence of some overriding medical evidence. And that medical evidence should come from the employee in time to save his job, not during a subsequent law suit. The judgment of the district court is AFFIRMED.

---

**4.** We have no occasion to decide whether or to what extent an employer must give notice to an employee that it is relying on the doctor's prior certification that the employee is not qualified for FMLA leave to deny subsequently requested FMLA leave. Here One Call told Stoops that it was relying on the prior certification to count subsequent absences against him. This was enough to put Stoops on notice that he had to do something and he did nothing.