*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0008p.06

# UNITED STATES COURTS OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LYNN HOFFMAN,

      *Plaintiff-Appellant,*

    *v.*

PROFESSIONAL MED TEAM, A MICHIGAN CORPORATION,
      *Defendant-Appellee.*

No. 03-1995

———————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00003—Gordon J. Quist, District Judge.

Argued: September 24, 2004

Decided and Filed: January 7, 2005

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Henry L. Guikema, Grand Rapids, Michigan, for Appellant. Lori L. Gibson, WARNER, NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Henry L. Guikema, Grand Rapids, Michigan, for Appellant. Lori L. Gibson, Sarah M. Riley, WARNER, NORCROSS & JUDD LLP, Grand Rapids, Michigan, for Appellee. Ann E. Reesman, McGUINESS, NORRIS & WILLIAMS, LLP, Washington, D.C., for Amicus Curiae.

———————————

## OPINION

———————————

ROGERS, Circuit Judge. During her employment as an emergency medical technician at Professional Med Team ("PMT"), Plaintiff-Appellant Lynn Hoffman was diagnosed with migraine headaches. PMT originally granted Hoffman intermittent leave under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601-2654; however, a conflict later developed over whether a medical certification form adequately documented Hoffman's need for leave. This dispute led to heated exchanges between Hoffman and her supervisor, in which Hoffman used profanity. PMT dismissed Hoffman, citing the profanity as the reason for her termination. More than two years after all relevant events, Hoffman sued, alleging that PMT interfered with her assertion of FMLA rights in violation of 29 U.S.C. § 2615(a)(1), when it denied her application for leave. Hoffman also alleged that PMT terminated her employment because of retaliation in violation of 29 U.S.C. § 2615(a)(2). Hoffman bore the burden of proving that PMT violated the statute willfully in order for her claims not to be time-barred. After a bench trial, the district court found that PMT was reasonable in rejecting Hoffman's request for leave, and that it did not willfully discriminate

1

against her based on FMLA grounds when it discharged her. Therefore, Hoffman's claims were barred by the statute of limitations. Because the district court did not commit clear error in rejecting either Hoffman's § 2615(a)(1) interference claim or her § 2615(a)(2) retaliatory discharge claim, we affirm.

Hoffman developed migraine headaches in 1993 or 1994, after more than five years as a PMT emergency technician specialist. The medication Hoffman must take to relieve her migraines causes extreme drowsiness, and she cannot work while taking the medication. Because the headaches are unpredictable, it is difficult to accommodate her condition through advance scheduling. She worked the same forty-eight-hour-week schedule throughout her time at PMT, despite being afflicted with migraines for approximately half of her tenure there. For at least one year prior to November 1997, Hoffman received FMLA intermittent leave for her migraines, because her family doctor, David Deitrick, had certified that they constituted a serious health condition.

In November 1997, PMT notified Hoffman that her doctor's previous certification contained an inconsistency, and PMT therefore required an updated form.[1] On December 4, 1997, Hoffman returned to Deitrick; she had filled out the certification form in advance, and Deitrick read and approved the contents and signed it. The written responses on the form indicated that Hoffman had "recurrent migraine headaches lasting 1 to 5 days" (question 4), and that the migraines "will cause intermittent short term disabilities" (question 5.a).[2] Most critically, Hoffman and her doctor answered "NO" to the question, "Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition. . .?" (question 5.b).

After consulting with its attorney, PMT declined to accept the certification. Hoffman's supervisor, Tim Schmiedeknecht, wrote her a letter stating that it appeared her "Medical Leave of Absence would be covered by the FMLA," but that the form contained a contradiction: it "states your condition will require intermittent short term disability . . ., yet . . . you answer 'no' to the question must work less than a full schedule. (These points seem contradictory.)"[3] PMT returned the form to Hoffman, requesting that she correct it by February 13, 1998. Hoffman and Deitrick agreed that the form was accurate as originally completed; they refused to revise the answers.[4] PMT sent Hoffman another letter on March 26, 1998, stating that, because Hoffman had not corrected her certification form, the company considered her application for FMLA leave canceled.

---

[1] The form, Form WH-380, is supplied by the Department of Labor and written to track the requirements of the relevant federal regulation.

[2] The following responses are also significant:

| | |
|---|---|
| Question 3: | Hoffman checked a box indicating she suffered a "chronic" serious health condition. |
| Question 6.a: | In response to a question asking the duration of leave periods required "if the patient will be absent from work or other daily activities because of the treatment on an intermittent or part-time basis," Hoffman replied, "2 days." |
| Question 7.a: | Hoffman replied "yes" to the question, "If medical leave is required for the employee's absence from work because of the employee's own condition . . ., is the employee unable to perform work of any kind?" |

[3] Hoffman testified that her prior certification form, which PMT had initially approved, had contained the same answer to question 5.b.

[4] Hoffman testified, as well, that she was reluctant to change her answer because she suspected Schmiedeknecht "wanted me to go part time so that they could terminate me eventually." She noted that "there weren't any part-time options at that point . . . [a]nd if there wasn't, he wouldn't have to have me working for him."

In October 1998, Hoffman missed several days of work because of a migraine. Schmiedeknecht sent Hoffman a letter registering his concern over the "increasing frequency" of her absences and questioning whether the migraines were interfering with her job duties. The letter required Hoffman to submit to a fitness-for-duty medical examination before returning to work. Hoffman complied, and the doctor found her fit for work without restrictions. When Hoffman visited Schmiedeknecht's office on October 7, 1998 to submit the doctor's note, she waved the note in Schmiedeknecht's face and told him to "quit fucking with [her]."[5]

The next day, Hoffman was not scheduled to work, but she went to the office to pick up her paycheck. She found that she had not been paid for the seventy-two hours of missed work. Hoffman went to Schmiedeknecht's office to object. Again, she told Schmiedeknecht to "quit fucking with [her]" and to "leave [her] alone." Schmiedeknecht ordered Hoffman to leave the building. PMT suspended Hoffman's employment that day. On October 21, 1998, PMT terminated Hoffman's employment, effective October 8, 1998. The termination letter cited four violations of the company's work rules: unprofessional conduct while working, discourteous conduct toward other employees, use of obscene language toward other employees, and violation of the company's anti-violence policy.[6]

Hoffman filed a complaint in the United States District Court for the Western District of Michigan on January 2, 2001, more than two years and two months after PMT terminated her employment. The complaint avers that PMT interfered with Hoffman's rights pursuant to 29 U.S.C. § 2615(a)(1) when it refused to grant her FMLA leave in October 1998, and that PMT discriminatorily discharged Hoffman in violation of 29 U.S.C. § 2615(a)(2) because she opposed PMT's denial of FMLA leave. The complaint avers that both violations were willful. The complaint also alleges discrimination pursuant to Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA").

The district court granted PMT's September 28, 2001 motion for summary judgment on Hoffman's PWDCRA claims.[7] It denied summary judgment on Hoffman's FMLA claims, however, finding that genuine issues of fact existed as to whether PMT willfully violated the Act. After a two-day bench trial in January 2003, the district court held that Hoffman failed to prove PMT willfully violated the FMLA either when it denied Hoffman's request for leave or when it discharged her. Accordingly, the district court deemed Hoffman's claims time-barred. *Hoffman v. Prof. Med Team*, 270 F. Supp. 2d 954, 967 (W.D. Mich. 2003). On July 3, 2003, the district court denied Hoffman's motion for reconsideration. Hoffman timely appealed.

The court's factual findings with regard to both interference and retaliatory discharge, following a bench trial, may not be set aside unless clearly erroneous. Fed. R. Civ. P. 52(a). Hoffman was clearly required to show willfulness in order to get the benefit of the FMLA's extended three-year statute of limitations for willful violations. 29 U.S.C. § 2617(c)(2) (2001). The district court did not err in concluding that PMT did not willfully disregard its FMLA obligations. Further, the court did not err in holding that legitimate, nondiscriminatory reasons motivated PMT to discharge Hoffman.

First, with regard to the interference claim, the standard for willfulness under the FMLA extended statute of limitations is whether the employer intentionally or recklessly violated the FMLA. The Supreme Court has so interpreted the term "willful" in the double damages provision of the Age Discrimination in

---

[5]Although the district court found that Hoffman had used vulgarity in this conversation, Hoffman denied it in her testimony; however, she admitted using the same vulgar language in a conversation with Schmiedeknecht the next day.

[6]Hoffman submitted a grievance concerning her termination on November 3, 1998. The union's collective bargaining agreement provided for arbitration of the issue; however, the arbitrator found that the grievance was time-barred.

[7]The trial judge originally assigned to the case, Judge Douglas Hillman, entertained the summary judgment motion. Upon his retirement, the case was assigned to Judge Gordon J. Quist.

Employment Act ("ADEA"), *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29 (1985), and in the more closely analogous statute-of-limitations provision of the Fair Labor Standards Act ("FLSA"). *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988). We have accordingly applied the same interpretation to the FMLA in a well-reasoned, albeit unpublished, opinion. *Williams v. Schuller Int'l, Inc.*, No. 00-3614, 2002 WL 193929, at *3 (6th Cir. Feb. 5, 2002). A review of the record shows that there was no clear error in finding that PMT neither intentionally nor recklessly violated the FMLA.

The FMLA provides up to twelve work weeks of leave to employees who experience family health-related emergencies or who, because of a serious health condition, are unable to perform the functions of their positions. 29 U.S.C. § 2612(a)(1). A "serious health condition" is one that involves either inpatient treatment in a hospital or continuing treatment by any health care provider. *Id.* § 2611(11). The FMLA recognizes that chronic illnesses, causing only episodic incapacity, may comprise serious health conditions. 29 C.F.R. § 825.114(a)(2)(iii)(C) (2004). Three kinds of leave are available to employees with a serious health condition: (1) one block of leave of twelve weeks or fewer; (2) intermittent leave, which means "leave taken in separate periods of time due to a single illness or injury . . . and may include leave of periods from an hour or more to several weeks"; and (3) reduced leave schedule, a plan under which the employer reduces the employee's normal work hours, usually to a part-time basis. 29 U.S.C. §§ 2612(a)(1), 2611(9); 29 C.F.R. §§ 825.800, 825.203(a). In order to receive leave, an employee is not required to invoke the FMLA expressly; however, she must give her employer notice of the request for leave, "stat[ing] a qualifying reason for the needed leave." 29 C.F.R. § 825.208(a)(2); *see also id.* § 825.302(c). An employer may not interfere with, restrain, or deny an eligible employee's exercise of rights under the statute. 29 U.S.C. § 2615(a)(1). To prevail in a claim of interference under the FMLA, the employee must prove, among other elements, that she was entitled to leave under the FMLA. *Cavin v. Honda of Am. Mfg., Inc.,* 346 F.3d 713, 719 (6th Cir. 2003).

At the outset we recognize that a confusingly worded Department of Labor regulation and medical certification form make it difficult to determine whether Hoffman's request for leave should have been granted. At its option, an employer may require that an employee submit a doctor's certification supporting her claim of a serious health condition warranting FMLA leave. 29 U.S.C. § 2613(a); 29 C.F.R. § 825.305(a). The Department of Labor provides a doctor questionnaire form, WH-380, which employers may choose to require for medical certifications. 29 C.F.R. § 825.306(a). The form tracks the language of the statute and implementing regulations, with one exception: While the regulation requires that intermittent leave applicants establish the medical necessity of "tak[ing] leave intermittently," question 5.b on the form asks whether it will be medically necessary for the employee to "take work only intermittently or to work on a less than full schedule. . ." *Id.* § 825.306(b)(2)(ii); Form WH-380. Hoffman's and PMT's dispute over purported contradictions in her certification centered on this discrepancy.

If the employer finds that the certification is incomplete, it must provide the employee with the chance to cure the deficiency. 29 C.F.R. § 825.305(d). The Seventh Circuit has held that employers have no responsibility to conduct further investigation when a certification is invalid on its face. *Stoops v. One Call Communications, Inc.,* 141 F.3d 309, 313 (7th Cir. 1998). To be valid, a certification must show that the employee's serious health condition makes her unable to perform job functions. 29 U.S.C. § 2612(a)(1)(D). Finding that Hoffman's certification form concluded her migraines did not require absence from work, PMT offered Hoffman the chance to correct the deficiency. When she refused, PMT informed her that her FMLA leave application was canceled.[8]

---

[8] Although the district court did not explicitly rule that Hoffman was not entitled to FMLA leave, the court cited *Stoops* for the proposition that an employee's "no" answer to question 5.b may mean "that an employee's serious health condition does not require him to miss work." *Hoffman,* 270 F. Supp. 2d at 964 (citing *Stoops*, 141 F.3d at 313). The district court therefore found that "PMT could have reasonably interpreted [Hoffman's] answer to question 5.b. as contradictory and not a valid request for FMLA leave." *Id.* at 963. In subsequently denying Hoffman's motion for reconsideration, the district court stated, "[T]here is no meaningful distinction between when an employee can take work and when an employee cannot take work—they are merely two sides of the same coin." J.A. at 39-40.

Whether or not Hoffman was entitled to FMLA leave, the district court did not err in concluding that PMT neither knowingly nor recklessly violated the FMLA by rejecting Hoffman's certification. *See Thurston,* 469 U.S. at 128-129. No evidence adduced at trial showed that PMT intentionally violated the FMLA—the first prong of *Thurston*—when it insisted that Hoffman assert that her condition required her to "take work only intermittently or to work on a less than full schedule." Schmiedeknecht's testimony suggested that the discrepancy between the regulation and Form WH-380 confused him. It did not show that he intentionally adopted an incorrect reading in order to deny Hoffman's FMLA rights.

The record also supports the district court's finding that PMT did not act with reckless disregard as to whether it had the right to deny leave to Hoffman. The district court found that Schmiedeknecht consulted with PMT's counsel about the form, and that PMT's refusal of the certification reflected conclusions derived from those meetings. Further, the district court cited PMT's offering Hoffman the opportunity to cure her certification, as well as the arguable congruence of PMT's interpretation of Form WH-380 with *Stoops* and the regulation, as evidence that PMT did not act recklessly with respect to whether it violated the Act. *Hoffman,* 270 F. Supp. 2d at 964.

PMT's consultation with both its attorney and Hoffman implies that the company tried to meet its obligations under the FMLA.[9] Cases under the ADEA and FLSA have found willfulness most frequently in situations in which the employer deliberately chose to avoid researching the law's terms or affirmatively evaded them. *See Alvarez v. IBP, Inc.,* 339 F.3d 894, 909 (9th Cir. 2003) (finding employer "could easily have inquired into the meaning of the relevant FLSA terms and the type of steps necessary to comply therewith"). On the other hand, in *Thurston,* the Supreme Court affirmed a finding of no willfulness where the airline made a good-faith attempt to formulate a pilot retirement policy compliant with the ADEA, but overlooked one facet of the plan that treated retiring pilots discriminatorily. *Thurston,* 469 U.S. at 129. As evidence of a lack of willfulness, the court emphasized the airline's close consultation with an attorney and with the pilots' union about its obligations. *Id.* at 130. Similarly, the First Circuit upheld a finding that a newspaper did not willfully violate the FLSA even though the newspaper discouraged its writers from reporting overtime, because the newspaper objected to the regulatory classification that made writers subject to the law. *Reich v. Newspapers of New England, Inc.,* 44 F.3d 1060, 1080 (1st Cir. 1995). Here, as in *Thurston*, PMT sought counsel from its attorney and met with the employee affected. Even if PMT scrutinized Hoffman's request more closely because it viewed unanticipated intermittent leave as disruptive to its business operations, the conclusion would be the same.[10] *Newspapers of New England* suggests that even some evidence of intent to avoid a law's consequences, if based on tenable arguments made by an employer who was "trying to do the right thing," does not make a lower court's finding of non-willfulness clear error.

The record also adequately supports the district court's factual finding that Hoffman had not been discharged in retaliation for her having opposed the denial of FMLA leave. Section 2615(a)(2) prohibits

---

Because we affirm the district court's factual finding regarding willfulness, we need not decide whether to accept this application of the Seventh Circuit's reasoning in *Stoops*.

[9] On appeal, Hoffman argues that this conduct shows Schmiedeknecht was motivated by a goal other than FMLA compliance: forcing Hoffman to switch to part-time or casual status. Interference claims under 29 U.S.C. § 2615(a)(1), however, do not import from the Title VII discrimination framework consideration of the employer's conflicting motives. *See Bachelder v. Am. West Airlines, Inc.,* 259 F.3d 1112, 1124 n.10 (9th Cir. 2001). Because the interference cause of action hinges solely on whether Hoffman was denied an entitlement, the willfulness inquiry examines only whether PMT knew or recklessly ignored the fact that the FMLA required it to grant Hoffman's leave request—not whether non-FMLA motives guided it.

[10] Schmiedeknecht stated that the unforeseeable nature of Hoffman's migraines led to "lessened predictability" and risks of inadequate patient care. In its *amicus curiae* brief, the Equal Employment Advisory Council ("EEAC") cites numerous ways in which intermittent leave threatens business effectiveness, including the difficulty of finding replacements at the last minute, the erosion of employee morale when employees are forced to shoulder the burdens caused by intermittent leave, and the employer's inability in FMLA situations to enforce internal notice policies for employee absences.

employers from discharging an employee because the employee opposed a practice made unlawful by the statute. The district court found that, because Hoffman reasonably believed she was entitled to FMLA leave and because she voiced objections to PMT's decision to deny it, she could sue for retaliatory discharge regardless of whether her certification form actually qualified her for leave. *Hoffman,*270 F. Supp. 2d at 965. The district court did not address whether Hoffman's heated exchanges with her supervisor constituted "opposition" as contemplated by the statute. Because the district court did not commit clear error in concluding that legitimate motives prompted PMT to terminate Hoffman, it is unnecessary for us to reach these questions.

Hoffman asserts on appeal that PMT fired her because she refused to "correct" a certification form that in fact complied with the FMLA, thus denying PMT an opportunity to downgrade Hoffman to part-time status. PMT argues that only Hoffman's inappropriate conduct toward her supervisor motivated the discharge decision. On appeal, PMT notes that using the certification form to justify forcing Hoffman to take more leave than her migraines required would be an FMLA violation; thus, as a reasonable employer understanding its FMLA obligations, it would not discharge Hoffman because she failed to revise the form.[11]

As is often true in cases alleging retaliatory discharge, the chief evidence of both discriminatory and non-discriminatory conduct on PMT's part is subject to conflicting interpretations. PMT's offering Hoffman the opportunity to "correct" her certification form could demonstrate solicitousness toward her FMLA rights; on the other hand, it could also suggest the ulterior motive of downgrading her to part-time status. Similarly, the fact that PMT discharged Hoffman for inappropriate language she used while arguing with her supervisor about her FMLA request suggests that PMT's frustration with the leave dispute may have motivated its discharge decision. On the other hand, the district court found it "reasonable to believe that Schmiedeknecht and PMT viewed [Hoffman's] hostile behavior as completely inappropriate and justifying termination." *Hoffman,* 270 F. Supp. 2d at 967. As finder of fact, the district court was uniquely positioned to sort out these conflicting implications. Its conclusions on this question were not clearly erroneous and are affirmed.

The district court's holding survives Hoffman's argument that her use of profanity was not a terminable offense under her union's collective bargaining agreement, and therefore did not form a legitimate reason for her discharge. Hoffman urges that the district court did not adequately consider the rule in *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000). *Reeves* held that under the ADEA, when a fact-finder concludes that an employer's purported legitimate purpose for discharge is false, the fact-finder may infer on that basis that the decision was based on the alleged discriminatory motive. *Id.* at 148. *Reeves* involved clear-cut falsity of the employer's reason for termination; there, the fact-finder concluded that the employer had incorrectly charged the plaintiff with making errors on time sheets. *Reeves,* 530 U.S. at 144–45. This case involves no such facts. The parties agree that Hoffman used profanity toward her supervisor. Disruptive conduct, even when it occurs in the context of employee

---

[11]This argument exhibits some tension with Schmiedeknecht's testimony at trial. Schmiedeknecht acknowledged that the desire to have "scheduling options" formed one reason he insisted that Hoffman change her certification form. He noted that part-time status was "one of the many" scheduling options a "yes" answer to question 5.b would permit. At oral argument, PMT counsel suggested that the company had also considered transferring Hoffman to a clerical job, so that her unexpected absences due to migraines would affect business operations less negatively.

PMT admits that scheduling needs played a role in its insistence on a "yes" answer to question 5.b, but argues this dispute was unrelated to its termination decision. PMT contends that some scheduling changes would constitute permissible accommodations of Hoffman's FMLA leave needs. This argument appears strained, in light of the unforeseeable nature of Hoffman's chronic condition. *See* 29 C.F.R. § 825.204(a) (providing that an employer may require a recipient of FMLA leave to transfer to an alternative position "[i]f an employee needs intermittent leave or leave on a reduced leave schedule that is *foreseeable based on planned medical treatment . . . .*") (emphasis added); *id.* § 825.204(c) (stating that employees with FMLA leave may be transferred to part-time jobs only if "the employee is not required to take more leave than is medically necessary"); *id.* § 825.204(d) (providing that the "alternative position" rule may not be used to work a hardship on the employee because she sought leave; for example, "a white collar employee may not be assigned to perform laborer's work").

protest, is widely viewed by courts as a legitimate ground for termination. *See Matima v. Celli,* 228 F.3d 68, 79 (2d Cir. 2000).

Hoffman's *Reeves* argument also fails to distinguish between a "legitimate reason" for discharge, and discharge for cause. The dispute over Hoffman's disciplinary violations concerns not whether Hoffman's purported misconduct actually occurred, as in *Reeves,* but whether the conduct was mischaracterized as a more serious offense in order for the collective bargaining agreement to justify PMT's termination decision. Title VII retaliatory discharge cases, which use the same analytical framework as FMLA retaliation claims, emphasize that the employer's reason for discharge does not have to be a *good* reason—i.e., for cause—for it to escape liability. Instead, the reason must merely be based on grounds not proscribed by the statute. *See Manzer v. Diamond Shamrock Chem. Co.,* 29 F.3d 1078, 1084–85 (6th Cir. 1994). The district court did not err in refusing to consider whether PMT's work rules and collective bargaining agreement justified its decision to discharge Hoffman; this is an irrelevant inquiry, since it does not address whether Hoffman's use of profanity sincerely motivated PMT's decision.

The district court's conclusion that disorderly conduct formed the true motivation for Hoffman's discharge therefore is not clearly erroneous.

For the foregoing reasons, the judgment of the district court is AFFIRMED.