**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 12-1438**

LYNN H. BRUSHWOOD,

           Plaintiff – Appellant,

    v.

WACHOVIA BANK, N.A.; WELLS FARGO BANK, N.A.,

           Defendants – Appellees.

Appeal from the United States District Court for the Western District of Virginia, at Roanoke.  Samuel G. Wilson, District Judge.  (7:10-cv-00565-SGW-RSB)

Submitted:  March 8, 2013         Decided:  April 11, 2013

Before WILKINSON, SHEDD, and DUNCAN, Circuit Judges.

Affirmed by unpublished opinion.  Judge Duncan wrote the opinion, in which Judge Wilkinson and Judge Shedd joined.

Terry N. Grimes, GRIMES & WILLIAMS, P.C., Roanoke, Virginia, for Appellant.  Dana L. Rust, Briton K. Nelson, MCGUIREWOODS LLP, Richmond, Virginia, for Appellees.

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Lynn Brushwood sued her former employer, Wells Fargo Bank, N.A., ("Wells Fargo") for interfering with her right to take protected medical leave in violation of the Family and Medical Leave Act, 29 U.S.C. § 2611 et seq. (2009) (the "FMLA"). Wells Fargo maintained that Brushwood failed to provide it with adequate notice that she sought FMLA leave. The district court agreed, granting summary judgment in the bank's favor. Echoing the district court's well-reasoned opinion, we affirm.

## I.

## A.

"In considering the grant of a motion for summary judgment, we view facts and inferences drawn from them in the light most favorable to the non-moving party." Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 324 (4th Cir. 2012).

Brushwood began working for Wells Fargo's predecessor, Wachovia Bank, in 1998. Although she filled a variety of positions during her tenure, she most recently held a stationary post as a customer service representative in the bank's Roanoke, Virginia operations center. Prior to the events underlying this suit, Brushwood took FMLA leave three separate times: "in 1998 to recover from surgery, in 2001 to recover from surgery, and in 2009 during treatment for depression." Brushwood v. Wachovia

Bank, N.A., No. 7:10-cv-00565, 2012 WL 642216, at *1 n.2 (W.D. Va. Feb. 28, 2012).

In January 2010, Wells Fargo instituted a "point system" attendance policy. Under the system, Wells Fargo added points to an employee's record for consistent attendance and punctuality and subtracted points for unscheduled absences and tardiness. A balance of negative forty-one points prompted an informal warning; negative fifty-seven points triggered termination. FMLA leave triggered no point reduction. It is undisputed that due to unscheduled absences between January and April 2010, Brushwood accumulated negative 62.5 points. Instead of terminating her as it could have done under the point system, Wells Fargo formally warned Brushwood in a letter dated April 20, 2010.

On Saturday, May 1, 2010, Brushwood was hanging curtains in her living room when she stepped onto her folding couch's metal reclining mechanism and cut the sole of her foot. The cut bled initially, then stopped after her husband cleaned and wrapped the wound. On Sunday, May 2, however, Brushwood's husband drove her to the Carilion Urgent Care facility because she was in pain. The attending physician, Dr. Mary Leatherland, examined the cut, noting that it was "3 cm in length" and "superficial with skin flap in[t]act over length of wound." J.A. 44. The doctor saw no need for stitches and "left [the wound] open to

3

heal." Id. Dr. Leatherland gave Brushwood a tetanus shot, cleaned and wrapped the cut, and prescribed pain medication. She also wrote Brushwood a note instructing her to miss work for one day--Monday, May 3, 2010. When Brushwood expressed surprise to the attending nurse about receiving only one day of excused absence, the nurse confirmed the one-day limitation.

When she returned home, Brushwood called her Wells Fargo supervisor, Doris Kent, and left a message describing her injury. On the morning of Monday, May 3, Brushwood telephoned Kent to explain that she had injured her foot and visited the urgent care facility, and that she had a doctor's note to miss work for one day. Kent expressed concern that any absence on or beyond Monday, May 3 would trigger Brushwood's termination, as Brushwood had exceeded the allowed points for unexcused absences. Kent asked Brushwood if she could "go to her personal doctor to see if he would keep her out longer than one day where she would be able to qualify for short-term disability and FMLA."[1] J.A. 224. Brushwood told Kent that "her doctor would not override what the emergency room doctor had told her" so she would only have one excused day of absence. Id. Brushwood

_____

[1] In her deposition, Brushwood said she could not remember Kent asking her about obtaining a note from her personal physician, but she did not deny the conversation, either. J.A. 307 ("I'm not gonna say that conversation didn't take place. I don't recall that conversation.").

4

explained that she had "even called over to Carilion" on Monday, May 3 to ask about extending her absence from work. Id. at 153. The urgent care facility reiterated the one-day limitation.

On Tuesday, May 4, Brushwood telephoned Kent to tell her she would be unable to come to work. Kent called Brushwood back to tell her that Wells Fargo was terminating her employment. On Friday, May 7, Brushwood came to the office on crutches to remove her things and sign her termination papers. That paperwork listed "violation of attendance policy" as the reason for her removal. J.A. 28.

Brushwood visited her personal physician on May 7, her first doctor's visit since Sunday, May 2. He noted a "slightly swollen" "2 cm laceration to the ball of [Brushwood's] foot." J.A. 50. Over three months after her termination, on August 20, 2010, Brushwood had a surgeon remove a cyst that had grown over the scar on her sole after two nonsurgical injections failed to correct it. According to Brushwood, her foot has not yet fully healed.

B.

On December 20, 2010, Brushwood filed a complaint in the Western District of Virginia, alleging that Wells Fargo violated the Americans with Disabilities Act (the "ADA") and the FMLA.

5

The parties filed cross-motions for summary judgment on Brushwood's FMLA claim.[2]

The district court granted Wells Fargo's motion after finding that Brushwood failed to put Wells Fargo on notice that she was requesting FMLA leave as the statute's implementing regulations require. It reasoned that since Brushwood failed to provide "'sufficient information' for [Wells Fargo] 'to reasonably determine'" that the FMLA might apply to her leave request, the bank did not violate the FMLA by terminating her in accordance with its attendance policy. Brushwood, 2012 WL 642216, at *1 (citing 29 C.F.R. § 825.303(b)). Although the district court's rationale rested on Brushwood's failure to give adequate notice, it explained that even assuming that Brushwood's May 7 office visit on crutches indicated "that she in fact had a serious medical condition under the FMLA justifying her absences," "'notice that comes after an alleged interference with an employee's FMLA rights is ineffective, even if the content would have been sufficient.'" Id., at *4 (quoting Couick v. Morgan, No. 4:10-cv-153, 2010 WL 5158206, at *3 (S.D. Ga. Dec. 14, 2010)). This appeal followed.

---

[2] Brushwood voluntarily dismissed her ADA claim.

The issue before us is whether Brushwood provided adequate notice of an FMLA-qualifying condition as a matter of law. We conclude she did not.

We review the district court's summary judgment ruling de novo. Reynolds v. Am. Nat'l Red Cross, 701 F.3d 143, 149 (4th Cir. 2010). Summary judgment is appropriate when there is no genuine issue of material fact, and the moving party is entitled to summary judgment as a matter of law. Id.

The FMLA "entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons."[3] Rhoads v. FDIC, 257 F.3d 373, 381-

---

[3] Wells Fargo also contends that Brushwood did not have an FMLA-qualifying "serious health condition." Because our determination on the question of notice is dispositive, we need not address whether she actually had an FMLA-qualifying condition. We note, however, that the regulations define a qualifying "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 C.F.R. § 825.113. "Continuing treatment by a health care provider" means:

> A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves: (1) Treatment two or more times, within 30 days of the first incapacity . . . or (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.

(Continued)

82 (4th Cir. 2001) (footnote omitted) (citing 29 U.S.C. § 2612(a)(1)). "An employee is mandated to provide notice to her employer when she requires FMLA leave." Id. at 382; see also Browning v. Liberty Mut. Ins. Co., 178 F.3d 1043, 1049 (8th Cir. 1999) ("[T]he employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."); Rodriguez v. Smithfield Packing Co., 545 F. Supp. 2d 508, 515-16 (D. Md. 2008) ("The core requirements for triggering an employer's obligations [under the FMLA] are a serious health condition and adequate communication, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply.").

Proper notice "'make[s] the employer aware that the employee needs FMLA-qualifying leave'" and includes "'the anticipated timing and duration of the leave.'" Rhoads, 257 F.3d at 382-83 (quoting 29 C.F.R. § 825.302(c)). "The employee, however, 'need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed . . . .'" Id. (quoting 29 C.F.R. § 825.302(c)); see also § 825.303(b) (providing similar notice requirements for

_____

Id. § 825.115(a)(1)-(2).

8

unforeseeable FMLA leave).  Once the employee has provided at least verbal notice of a serious health condition sufficient to alert the employer to the fact that the protections of the FMLA may apply, "[t]he employer should inquire further to ascertain whether it is FMLA leave that is being sought and to obtain further details of this leave."  Rhoads, 257 F.3d at 383.

Taking the facts in the light most favorable to Brushwood, she has failed to meet the threshold notice requirement. Brushwood informed Wells Fargo on Sunday, May 2, 2010, and Monday, May 3, 2010, that she had cut her foot and that Dr. Leatherland would only write her a note reflecting a need for her to miss work for one day (Monday, May 3).  As Doris Kent knew that absence on or beyond May 3 would lead to Brushwood's termination, Kent suggested that Brushwood approach her personal physician "to see if he would keep her out longer than one day where she would be able to qualify for short-term disability and FMLA."  J.A. 224.  Brushwood replied that one day was "all that the emergency room doctor had written her out for," and that "her doctor would not override" Dr. Leatherland's one-day limitation.  Id. at 223-24.  Brushwood admitted that the urgent care facility denied her subsequent request for additional excused time off.

This information--all that Wells Fargo had at the time it initiated Brushwood's termination--was simply insufficient to

9

put Wells Fargo on notice that Brushwood had an FMLA-qualifying "serious health condition" that would result in "[a] period of incapacity of more than three consecutive, full calendar days" and "[t]reatment two or more times" or "a regimen of continuing treatment under the supervision of [a] health care provider." 29 C.F.R. § 825.115(a)(1)-(2). Indeed, the facts actually indicate that at the time Brushwood notified Wells Fargo of her May 3 absence, she did not believe a doctor would excuse her for more than one day. As the district court aptly summarized:

> Brushwood's message objectively viewed distills to this: Brushwood's treating physician did not believe her condition to be sufficiently serious to justify her absence from work for more than a single day and Brushwood thought it futile, and would not request, an excuse from her personal physician.

Brushwood, 2012 WL 642216, at *4.

Brushwood's attempt to analogize her notice to that given in Cavin v. Honda of America Manufacturing, Inc., 346 F.3d 713 (6th Cir. 2003), is unavailing because Cavin is factually distinguishable from the case at hand. In Cavin, the Sixth Circuit held that the employee had given Honda proper notice of his need for FMLA-qualifying leave when he called in to say he had been in a motorcycle accident, had been treated at the emergency room, and was unable to work as a result, even though he did not specify that he would be out for more than one day. Id. at 724-25. The employee later produced notes from two

10

doctors excusing him for every day he had missed.  Id. at 717. Unlike the employee in Cavin, however, when Brushwood's supervisor inquired as to her condition and term of absence, Brushwood informed her that a doctor would not excuse her for more than one day.  We note as well that unlike Cavin, Brushwood has never produced any doctor's note stating she could not work during the relevant period.

We find the facts and analysis in Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998), more instructive here.  There, the employee, Stoops, provided his employer, One Call, with a doctor's note indicating that his chronic fatigue syndrome was not an FMLA-qualifying condition. One Call then fired Stoops for excessive absences after he continued to miss work based on the disqualified condition. Stoops sued for FMLA interference, claiming "One Call had to . . . request another physician's certification if it needed more information."  141 F.3d at 313.  The Seventh Circuit rejected Stoops' claim and concluded that "Stoops was the person most able to determine that the initial certification was 'wrong' and was the person with the incentive, certainly the burden, to have it corrected."  Id.  Because "Stoops did nothing to obtain a contrary opinion" and in fact never "obtain[ed] a contrary opinion" prior to summary judgment proceedings, the employer correctly relied on the certification stating that his chronic

11

fatigue syndrome was not an FMLA-qualifying health condition. Id.

While Stoops is distinguishable because One Call had a doctor's note indicating that Stoops' condition was not FMLA-qualifying, the case nevertheless supplies a useful framework for analyzing a situation in which an employee disagrees with a doctor's diagnosis but submits no contrary medical opinion. Although Wells Fargo did not have the benefit of a prior medical certification here, it did have notice, as of May 4, that Brushwood (1) could not obtain a note from the urgent care doctor for more than one day of excused absence, and (2) did not think she could obtain a longer excuse from her primary physician. As an FMLA-qualifying "serious health condition" is one that results in incapacity for three full, consecutive calendar days, Wells Fargo was not on notice that Brushwood was suffering from an FMLA-qualifying condition when it terminated her employment.

Even were we to find, and we do not, that Brushwood's use of crutches on Friday, May 7, or August 2010 cyst removal surgery constituted notice of an FMLA-qualifying health condition, notice given after termination does not suffice to trigger an employer's FMLA duties. See Aubuchon v. Knauf Fiberglass, GmbH, 359 F.3d 950, 953 (7th Cir. 2004) (rejecting employee's FMLA interference claim when the employee produced

12

notice of a serious health condition "after he was fired" which was "too late").

Brushwood attempts to muddy the notice issue by contending that, although she learned she would be terminated on Tuesday, May 4, she was not actually fired until Friday, May 7, when she signed her termination papers in the office. Appellant's Br. at 23. As such, she argues that Wells Fargo had notice that she "had been incapacitated for a period of more than three consecutive, full calendar days" at the time of technical termination. Id. While novel, Brushwood's contention that she could simply stay home for three days and then claim she was incapacitated without producing an iota of medical evidence to support that fact is incurably flawed. As Wells Fargo aptly rejoins: "What [Brushwood] could not do is ignore the existing medical evidence, refuse to see another medical provider, decide not to work, and expect her employer to conclude that her leave might be covered by the FMLA." Appellee's Br. at 18.

Brushwood failed to give Wells Fargo adequate notice that she was requesting FMLA-qualifying leave in the first instance. Her contentions that the bank "jumped the gun" by not requesting further medical information and terminating her before she produced qualifying medical information to support her FMLA claim are therefore unavailing.

13

III.

For the foregoing reasons, we affirm the judgment of the district court.

<u>AFFIRMED</u>