**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0349n.06
Filed: May 3, 2005

**No. 04-3550**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Thomas E. Johnston, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| Paul H. O'Neill, Secretary of the United | ) | THE NORTHERN DISTRICT OF |
| States Department of the Treasury, | ) | OHIO |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MERRITT and ROGERS, Circuit Judges; DUPLANTIER, District Judge.[*]

**Rogers, Circuit Judge.** Thomas Johnston, a former Special Agent for the Bureau of Alcohol, Tobacco and Firearms (ATF), sued the Treasury Department for employment discrimination based on his age and based on retaliation for participating in Equal Employment Opportunity (EEO) proceedings. After unsuccessfully prosecuting his claims before the EEOC, Mr. Johnston sued in district court. On appeal, he challenges the district court's decisions to: (1) deny his motion to amend his complaint to include a claim for malicious prosecution; and (2) grant the Treasury Department's motion for summary judgment on his employment discrimination claims. We affirm.

Mr. Johnston's motion to amend the complaint was properly denied; the proposed

_____

[*]The Honorable Adrian G. Duplantier, United States District Judge for the Eastern District of Louisiana, sitting by designation.

amendment to add the tort claim of malicious prosecution would be futile because Mr. Johnston

did not exhaust his administrative remedies prior to bringing suit as required by the Federal Tort

Claims Act (FTCA).  As to Mr. Johnston's employment discrimination claims, the district court

properly granted summary judgment in favor of the Treasury Department because, despite the

volume of materials submitted by Mr. Johnston, he fails to raise a genuine issue of material fact

regarding any of his employment discrimination claims.

I.

Mr. Johnston's dispute with the ATF stems from the less than harmonious working

environment in the ATF's Toledo office in the mid-1990's, centering on ATF agent Stephanie

Shoemaker and an investigation into a possible leak in the office.[1]  While Mr. Johnston's lawsuit

can be traced to the discord in the Toledo field office, Mr. Johnston's suit for employment

discrimination more directly stems from his application for a position as a group supervisor in

the ATF's Detroit office.  Mr. Johnston applied for supervisory positions in February of 1996, in

response to Vacancy Announcement 96-112 ("VA 96-112"), and in June of 1996, in response to

Vacancy Announcement 96-276 ("VA 96-276").  In each case, a younger and, according to Mr.

Johnston, less experienced candidate was selected for the position.  Mr. Johnston attributes the

decision not to select him as a supervisor in Detroit to either age discrimination or retaliation for

---

[1]This is the second employment discrimination action to be heard by this court arising out of the complaints against Agent Shoemaker and the alleged leak; for further background on this case, *see Peltier v. United States*, 388 F.3d 984 (6th Cir. 2004).

his filing of EEO complaints.

Mr. Johnston began his career with the ATF in 1977 and over the years worked in the ATF's Cleveland, Toledo, and Detroit field offices. While Mr. Johnston was serving as the "Resident Agent in Charge" (or supervisor) for the Toledo office, the ATF hired Ms. Shoemaker and assigned her to the Toledo office. According to Mr. Johnston, and partially confirmed by other documents, Ms. Shoemaker was a disruptive presence in the Toledo office who made life difficult for Mr. Johnston. Ms. Shoemaker repeatedly accused Mr. Johnston of a variety of misdeeds, the most serious being sexual harassment and the approval of expenditures to investigate crimes outside the scope of the ATF's enforcement agenda in an ongoing criminal investigation. Mr. Johnston contends that, based on Ms. Shoemaker's accusations, two ATF supervisory agents in the Cleveland office, Charles Wallace and John Pasaka, forced Mr. Johnston to accept a demotion from his supervisory position and a transfer to the Detroit office by threatening him with a poor performance review. Mr. Johnston accepted a criminal investigator position in the Detroit office on February 19, 1995, and began work in Detroit on March 15, 1995.

Once in Detroit, Mr. Johnston applied for a group supervisory position, similar to the one he had held in Toledo, in response to VA 96-112, posted on January 31, 1996. Mr. Johnston, born October 23, 1948, was the oldest of several applicants rated "best qualified" for the position. The ATF employee who decided which applicant would be selected for VA 96-112 was the Deputy Associate Director of Criminal Enforcement - East, Donnie Carter, the "deciding

official." Mr. Carter received input in filling the vacancy from the Special Agent in Charge of the Detroit office, Stanley Zimmerman, the "recommending official."

While Mr. Johnston's application for the supervisory position was pending, on March 3, 1996, Mr. Johnston and two agents from the Toledo office submitted a group grievance to Mr. Carter based primarily on racial discrimination (in the case of the two other agents) and a hostile work environment caused by Ms. Shoemaker. The grievance was refiled as an EEO complaint on May 3, 1996, and the ATF settled with the two other agents, but not Mr. Johnston. While the group grievance was pending, on April 26, 1996, Mr. Carter, with input from Mr. Zimmerman, selected John Carpenter to fill VA 96-112. Mr. Carpenter is ten years younger than Mr. Johnston.

After Mr. Carpenter was selected for VA 96-112, Mr. Johnston filed an individual EEO complaint on May 28, 1996. Mr. Johnston sought relief for the hostile work environment in Toledo, his reassignment to Detroit, and the failure to promote him in the Detroit office. The EEO office dismissed his complaint as untimely under 29 C.F.R. § 1614.105(a)(1) (2004) to the extent it was based on the hostile work environment in Toledo or his transfer to Detroit, as Mr. Johnston had not sought EEO counseling within 45 days of those events. However, Mr. Johnston's EEO complaint regarding the failure to promote was timely and proceeded. After filing his individual EEO complaint, Mr. Johnston applied for another supervisory position in response to Vacancy Announcement 96-276 and was again denied the promotion. There is very little information regarding the selection process for VA 96-276 because it was not the subject of

Mr. Johnston's EEO complaint or hearing.

At the hearing held in connection with Mr. Johnston's individual EEO complaint, Mr. Zimmerman testified that in his capacity as recommending official, he considered Mr. Carter's and Mr. Pasaka's opinion of Mr. Johnston as a group supervisor. Mr. Zimmerman testified that he was amenable to hiring Mr. Johnston, but that Mr. Carter had a negative view of his ability as a supervisor. Mr. Zimmerman also testified that he discussed Mr. Johnston's application with Mr. Pasaka, who told Mr. Zimmerman that he held a low opinion of Mr. Johnston's abilities as a supervisor, based on his opinion of Mr. Johnston's inter-personal skills, judgment, and integrity. In addition, Mr. Zimmerman also testified that he had two priorities in selecting an applicant for VA 96-112: (1) experience at ATF headquarters in Washington, D.C.; and (2) arson and explosives experience. Mr. Zimmerman testified in detail regarding his process for making a recommendation, noting his top selection was Mr. Carpenter because he had the two relevant qualifications Mr. Zimmerman sought. Mr. Zimmerman denied that Mr. Johnston's age or EEO complaint was a factor in making his recommendation.

Mr. Carter, the deciding official for VA 96-112, also testified at the EEO hearing. Mr. Carter denied that age or Mr. Johnston's EEO activity played a role in his selection of Mr. Carpenter over Mr. Johnston. Mr. Carter testified that Mr. Johnston was one of the top three candidates for the position, and the selection of Mr. Carpenter was primarily based on his conversation with Mr. Zimmerman, who indicated Mr. Carpenter was his top choice. Mr. Carter also testified that Mr. Zimmerman indicated Mr. Johnston was a good agent, that he was

unaware of Mr. Pasaka's opinion of Mr. Johnston, and he did not recall expressing any opinion

regarding Mr. Johnston's abilities as a supervisor prior to reviewing his application.

While Mr. Johnston's EEO complaint was pending, he continued to work in the Detroit

office. On April 9, 1997, a bombing occurred in Springfield Township, Ohio. The prime

suspect was the victim's husband, Charles Lister, and an ATF task force was assembled to

investigate him, headed by Ms. Shoemaker. When a search warrant was executed, Mr. Lister

seemed unsurprised and agents discovered a note with information coinciding with the time that

the search warrant would be executed and the hotel where certain ATF agents were staying. An

ATF internal affairs investigation commenced, based on the possibility that a leak in the Toledo

office had occurred. The investigation focused on Mr. Johnston, apparently because of Mr.

Johnston's animus towards Ms. Shoemaker. The leak investigation was abandoned when it

became clear that the note that had been found related to a financial seminar Mr. Lister was

planning to attend and the relationship between the note and the search warrant was a

coincidence.

Mr. Johnston's individual EEO complaint alleging age discrimination and retaliation was

heard before an administrative law judge in May of 1997. Following the hearing, the ALJ found

that while Mr. Johnston had made out a prima facie case of discrimination and retaliation, he had

failed to rebut the non-discriminatory reasons offered by the Treasury Department for hiring Mr.

Carpenter. After appealing the decision through the EEOC, Mr. Johnston was notified of his

right to file suit in district court, which he exercised. Mr. Johnston's complaint in the district

court was expanded to include four counts of employment discrimination, based on his age and retaliation for participating in EEO proceedings. Mr. Johnston claimed he was discriminated against on the basis of age because younger, less qualified applicants were selected to fill supervisory positions in the Detroit office in response to VA 96-112 and VA 96-276. Mr. Johnston based his claim of retaliation for participating in the EEO processes on: (1) the ATF's denial of a promotion to a supervisory position in Detroit; and (2) the "secret" and "unfounded" investigation in connection with the supposed leak in the Toledo office. Mr. Johnston also alleged that, taken together, the ATF's actions caused his constructive discharge; Mr. Johnston also reiterated his claim that he was subjected to a hostile working environment while in the Toledo office.

After the district court granted partial summary judgment to the Treasury Department on Mr. Johnston's claim that he was subjected to a hostile work environment, Mr. Johnston sought to amend his complaint to add a claim of malicious prosecution, based on the grand jury proceedings commenced in connection with the Toledo leak investigation. The district court denied leave to amend the complaint because the proposed amendment would be futile, given that the malicious prosecution claim was based on allegedly perjured grand jury testimony. The district court based its ruling on case law establishing that the ATF agent who testified before the grand jury would be absolutely immune from suit based on the allegedly false testimony.

The Treasury Department then filed a second motion for summary judgment, which the district court granted, disposing of Mr. Johnston's case. The district court found that Mr.

Johnston had failed to exhaust his administrative remedies with respect to his non-selection for VA 96-276. As to Mr. Johnston's claims of age discrimination and retaliation based on his non-selection for VA 96-112, and retaliation based on the Toledo leak investigation, the district court found that Mr. Johnston had, under the familiar burden shifting regime of Title VII, failed to show that the Government's decisions were pretextual. Finally, the district court found that Mr. Johnston's claim of constructive discharge was without merit. This appeal followed.

II.

The district court properly denied Mr. Johnston's motion to amend his complaint to include a claim of malicious prosecution because such an amendment would be futile. In general, leave to amend the plaintiff's complaint "shall be freely given when justice so requires." FED. R. CIV. P. 15(a). While this is a liberal standard, the district court need not grant the plaintiff leave to amend his complaint if amending the complaint would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (dictum). When, as in this case, "the district court bases its decision to deny leave to amend on a legal conclusion that amendment would be futile ... this court reviews the decision *de novo*." *Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th Cir. 2003).

Mr. Johnston's motion to amend his complaint to include a tort claim against the Treasury Department for malicious prosecution would be futile and was properly denied, as the

district court lacked jurisdiction to hear such a claim under the terms of the FTCA.[2]  The FTCA, the exclusive means for a plaintiff to sue the United States in tort, contains a jurisdictional prerequisite that a prospective plaintiff present a written claim for a sum certain describing the incident to the appropriate agency prior to filing suit.  28 U.S.C. § 2675 (2000); 28 C.F.R. § 14.2 (2004).  Mr. Johnston did not present his tort claim to the Treasury Department prior to attempting to amend his complaint in 2003.  Mr. Johnston's Title VII suit is insufficient to satisfy the administrative claim requirement of the FTCA, and "[t]here is no equitable exception to the jurisdictional prerequisites of the Federal Tort Claims Act in this Circuit." *Rogers v. United States*, 675 F.2d 123, 124 (6th Cir. 1982).

### III.

We also affirm the grant of summary judgment in favor of the Treasury Department on Mr. Johnston's employment discrimination claims.[3]  Mr. Johnston claims that he was

---

[2]Mr. Johnston faces an initial hurdle in his motion to amend the complaint because he did not seek to add the United States as a party, but referred to "the defendant" or "the agency" in the motion.  The original complaint clearly named only a single defendant: the Secretary of the Treasury in his official capacity.  An official capacity suit against a federal employee may be paid only with funds from the federal treasury, and federal agencies are immune from tort suits. 28 U.S.C. § 2679 (2000).  Thus, the "[f]ailure to name the United States as defendant in an FTCA suit results in a fatal lack of jurisdiction." *Allgeier v. United States*, 909 F.2d 869, 871 (6th Cir. 1990).  In assessing the futility of the motion to amend the complaint, however, we will assume that Mr. Johnston could correct his mistake in pleading and properly name the United States as the defendant in his proposed action for malicious prosecution.

[3]As always, we review the district court's grant of summary judgment de novo, and summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003).

discriminated against in his non-selection for VA 96-112 and VA 96-276, on the basis of either age or his EEO activity, in violation of 29 U.S.C. § 633a (2000) and 42 U.S.C. §§ 2000-e3(a) (2000). He further claims that the investigation into the Toledo leak was retaliation for his EEO activity, similarly in violation of § 2000-e3(a). Finally, he claims that his retirement from the ATF was a constructive discharge, based on the ATF's refusal to promote him and the Toledo leak investigation. Summary judgment in favor of the Treasury Department was appropriate for all of Mr. Johnston's employment discrimination claims, but each for a different reason. First, as to VA 96-112, Mr. Johnston fails to establish that the ATF's proffered reasons for selecting Mr. Carpenter were pretextual. Second, as to the Toledo leak investigation, Mr. Johnston fails to establish that he suffered any adverse employment action as a result of the investigation. Third, as to constructive discharge, Mr. Johnston fails to establish that the working conditions at the ATF "compelled" his retirement. Fourth, and finally, with regard to VA 96-276, Mr. Johnston cannot establish that he exhausted his claim administratively prior to filing suit.

Each of Mr. Johnston's claims must run the familiar gauntlet of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), which allocates the burden of production for employment discrimination claims proved by indirect evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (applying *McDonnell Douglas*'s three part framework in ADEA action); *accord Hoffman v. Prof'l Med Team*, 394 F.3d 414, 421-22 (6th Cir. 2005); *Ford v. General Motors Corp.*, 305 F.3d 545, 552-53 (6th Cir. 2002) (applying *McDonnell Douglas*'s three part framework in Title VII retaliation action). Under that test, a

plaintiff must first come forward with evidence establishing his prima facie case of

discrimination. *Reeves*, 530 U.S. at 142. If the plaintiff is successful in doing so, the burden of

production shifts to the defendant to establish that the allegedly discriminatory action was

actually taken for a legitimate, nondiscriminatory reason. *Id.* The burden of persuasion, always

with the plaintiff, then requires the plaintiff to come forward with evidence demonstrating that

the non-discriminatory reasons proffered by the employer for its action were a pretext for

discrimination. *Id.*; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252 (1981).

### A. VA 96-112

Mr. Johnston cannot establish a genuine issue of material fact calling into question the

ATF's proffered reasons for hiring Mr. Carpenter, and therefore the district court properly

granted summary judgment in favor of the Treasury Department. Under the burden shifting

regime above, there is no dispute that Mr. Johnston proved his prima facie case of both age

discrimination and retaliation based on his non-selection for VA 96-112. The ATF selected Mr.

Carpenter for the position, ten years his junior and less that forty years old at the time. *See*

*Grosjean v. First Energy Corp.*, 349 F.3d 332, 336-37 (6th Cir. 2003). The timing of his EEO

grievance and the decision not to promote him are sufficient to infer he was denied the

promotion because of his complaint. *See Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555,

563 (6th Cir. 2004).

The ATF, bearing the burden to proffer a non-discriminatory reason for hiring Mr.

Carpenter, presented the testimony of Messrs. Carter and Zimmerman on the selection process for VA 96-112. Mr. Carter and Mr. Zimmerman both testified that neither age nor the EEO grievance played a role in the decision to hire Mr. Carpenter instead of Mr. Johnston. Mr. Carter further testified that he had promoted individuals of Mr. Johnston's age for other supervisory positions and that generally he promoted people from outside an office to fill a vacant supervisory position. Messrs. Zimmerman and Carter both testified at length regarding the selection process for VA 96-112, describing Mr. Zimmerman's preference for an individual with experience in ATF headquarters and arson or explosives experience, and Mr. Carter's acceptance of Mr. Zimmerman's first choice for the position, Mr. Carpenter.

Under *McDonnell Douglas*, the burden then shifted to Mr. Johnston to demonstrate that the ATF's proffered reason for hiring Mr. Carpenter was pretextual, masking an intent to discriminate because of either age or EEO activity. A plaintiff can demonstrate pretext by showing by a preponderance of the evidence that the proffered reason either (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Mr. Johnston attempts to go the second route and demonstrate that the proffered reason was not the actual reason the ATF denied him the promotion.

Mr. Johnston contests at length the ATF's proffered reasons for hiring Mr. Carpenter, but his opinion regarding the relative merits of his experience and Mr. Carpenter's does not rebut the non-discriminatory reasons offered by Messrs. Carter and Zimmerman for selecting Mr.

Carpenter. Mr. Johnston presents no evidence of discrimination on the basis of age, other than the fact that a younger individual was selected for the promotion, to rebut the testimony of Messrs. Carter and Zimmerman. He cannot rely solely on his prima facie case to rebut the ATF's proffered reason for hiring Mr. Carpenter, and therefore summary judgment was proper on his claim of age discrimination because he has failed to demonstrate pretext. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 472 (6th Cir. 2002).

Mr. Johnston more seriously contests the proffered reasons for hiring Mr. Carpenter in the context of his retaliation claim, citing several discrepancies between Mr. Zimmerman's and Mr. Carter's testimony at the EEO hearing. However, the discrepancies in the testimony offered by Messrs. Zimmerman and Carter do not rebut the non-discriminatory reasons they offered for promoting Mr. Carpenter instead of Mr. Johnston. Both Mr. Carter and Mr. Zimmerman clearly testified as to their reasons for hiring Mr. Carpenter, which had nothing to do with Mr. Johnston; both also affirmatively testified that the grievance played no role in the decision making process. The discrepancies pointed out by Mr. Johnston are, at most, minor, and insufficient to create a genuine issue of material fact. Mr. Johnston can demonstrate only that Messrs. Carter and Zimmerman were aware of the grievance, which is insufficient to establish pretext and is generally relevant only to establishing awareness of the protected activity. *See Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002).

- 13 -

B.      The Toledo Leak Investigation

As Mr. Johnston fails to demonstrate that he suffered any adverse employment action as a result of the Toledo leak investigation, the Treasury Department was entitled to summary judgment on Mr. Johnston's claim of retaliation. Mr. Johnston argues that the Toledo leak investigation in 1997 was conducted in retaliation for the group and individual EEO complaints he made in the spring of 1996. However, Mr. Johnston admits that all charges in the matter were dropped and that he was not otherwise punished in connection with the leak investigation. "An essential element of a retaliation claim is that the plaintiff suffered an adverse employment action that is tantamount to a materially adverse change in the terms of [his] employment." *Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 169 (6th Cir. 2004). Even if it is assumed that the leak investigation was undertaken in retaliation for his EEO complaints, summary judgment was properly granted to the Treasury Department because Mr. Johnston cannot show the terms of his employment changed as a result of the investigation.

C.      Constructive Discharge

Summary judgment in favor of the Treasury Department on Mr. Johnston's claim of constructive discharge was proper because Mr. Johnston cannot show both that his employer deliberately created intolerable working conditions with the intention of forcing him to quit, and that a reasonable person working under those conditions would have felt compelled to quit. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001). As the district court stated:

> While [Mr. Johnston] may have been frustrated at not being promoted, at the determination that his allegations about the female agent were deemed unfounded, and having had questions raised about whether he had leaked confidential information to a criminal suspect, such frustration did not cause [Mr. Johnston's] working conditions to have been intolerable to the point that a reasonable person would have felt compelled to retire.

Mr. Johnston's vague allegations that the ATF had "done this before" and that he retired to "save his pension" are insufficient to create a genuine issue of material fact regarding Mr. Johnston's claim of constructive discharge.

D.     VA 96-276

Summary judgment in favor of the Treasury Department on Mr. Johnston's claim of employment discrimination related to VA 96-276 was proper because he failed to exhaust his administrative remedies with respect to that claim. "[M]ost Title VII claimants are unschooled in the technicalities of the law and proceed without counsel," requiring the EEOC charge be given a broad reading to prevent procedural default. *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 546-47 (6th Cir. 1991). However, Mr. Johnston's failure to raise the claims related to VA 96-276, despite the fact that the non-selection occurred while the EEOC administrative complaint was pending precludes his suit based on the denial of his application for that position. *See id.* at 545-46.

AFFIRMED