**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1772
_____

DEBORAH HANSLER,
                                        Appellant

v.

LEHIGH VALLEY HOSPITAL NETWORK

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-13-cv-03924)
District Judge: Honorable James Knoll Gardner
_____

Argued: January 13, 2015

Before: AMBRO, FUENTES, and ROTH, *Circuit Judges*

(Filed: June 22, 2015)

Samuel A. Dion, Esq. **[ARGUED]**
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
        *Counsel for Appellant*

Darren M. Creasy, Esq.
Karyn Dobroskey Rienzi, Esq.
A. James Johnston, Esq.
Andrea M. Kirshenbaum, Esq. **[ARGUED]**
Post & Schnell
1600 John F. Kennedy Boulevard
Four Penn Center, 14th Floor
Philadelphia, PA 19103

Glenn Guanowsky, Esq.
Lehigh Valley Hospital
Department of Legal Services
1200 South Cedar Crest Boulevard
P.O. Box 689
Allentown, PA 18103
        *Counsel for Appellee*

---

OPINION

---

FUENTES, *Circuit Judge*.

Deborah Hansler requested intermittent leave from her former employer, Lehigh Valley Health Network ("Lehigh Valley"), under the Family Medical Leave Act of 1993 ("FMLA" or the "Act"), 29 U.S.C. § 2601 *et seq.*[1] Specifically, Hansler submitted a medical certification requesting leave for two days a week for approximately one month. As alleged in the complaint, the medical certification refers to the length of her requested leave but not the nature or duration of her condition. A few weeks later, after she took several days off work, Lehigh Valley terminated Hansler's employment without seeking any clarification about her medical certification, as required by law. Lehigh Valley cited excessive absences and informed her that the request for leave had been denied. Hansler sued Lehigh Valley for violations of the Medical Leave Act, and the District Court dismissed the complaint on the basis that the medical certification supporting Hansler's request for leave was "invalid." We conclude that, in failing to afford Hansler a chance to cure any deficiencies in her medical certification, Lehigh Valley violated the Medical Leave Act. Accordingly, we reverse and remand for further proceedings.

I.

Hansler was hired by Lehigh Valley in 2011 to work as a technical partner. In early March 2013, Hansler began experiencing shortness of breath, nausea, and vomiting. At the time, the cause of these symptoms was unknown. On March 13, Hansler's physician completed a medical

---

[1] The case name incorrectly refers to Lehigh Valley Health Network as Lehigh Valley Hospital Network.

3

certification form "requesting intermittent leave at a frequency of 2 times weekly starting on March 1, 2013 and lasting for a probable duration of one month– or until about April 1, 2013." App. 44. Hansler submitted the certification to Lehigh Valley as part of a formal request for leave under the Medical Leave Act. As a result of her condition, Hansler was unable to work on March 13, 14, 23, 24, and 25.

Without seeking further information about the medical certification from either Hansler or her physician, Lehigh Valley terminated Hansler at the end of her shift on March 28. The basis for Hansler's termination was absenteeism, including the five days she took off in March. Hansler reminded Lehigh Valley that she had requested time off under the Medical Leave Act, but Lehigh Valley informed her, for the first time, that her request had been denied. Following the last of her absences, Hansler learned of a letter dated March 26 explaining that her request for "leave of absence (FMLA) for the period of 3/1/13-3/11/13" was denied because her "condition presently does not qualify as a serious health condition under the criteria set forth by the [Medical Leave Act]." App. 45. In early April 2013, after her dismissal, Hansler received a diagnosis of diabetes and high blood pressure. She alleges that these previously undiagnosed and untreated conditions are what caused her March absences.

Hansler sued Lehigh Valley under the Medical Leave Act for interfering with her substantive rights to medical leave and for terminating her in retaliation for seeking leave. In her complaint, Hansler alleges she has chronic serious health conditions and argues that Lehigh Valley improperly denied her request for leave without providing her an opportunity to cure her medical certification. The District

4

Court granted Lehigh Valley's motion to dismiss for failure to state a claim. It concluded that Hansler's request for leave was defective because her medical certification indicated that her condition would last only one month, but the Medical Leave Act requires that a chronic serious health condition persist for an "extended period of time." The District Court held that because the certification showed that Hansler was not entitled to leave, Lehigh Valley was not required to afford Hansler a cure period and was permitted to terminate Hansler for her subsequent absences. That Hansler was later diagnosed with diabetes and high blood pressure was of no consequence. According to the Court, "[a]lthough the timing of events for plaintiff was, without question unfortunate, the fact remains that her diagnosis with diabetes and high blood pressure did not occur until after her leave request was denied and she was fired by defendant." *Hansler v. Lehigh Valley Health Network*, No. 13-cv-03924, 2014 WL 1281132, at *10 (E.D. Pa. Mar. 28, 2014). Hansler filed this appeal.[2]

---

[2] The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction to review the District Court's final order under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Pearson v. Sec'y Dep't of Corr.*, 775 F.3d 598, 601 (3d Cir. 2015). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

## II.

Congress passed the Medical Leave Act "to balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b). The Medical Leave Act carries out these objectives by providing that eligible employees are entitled to 12 workweeks of leave during any 12-month period if the employee has a "serious health condition" that makes the employee unable to perform the functions of her position. *Id.* § 2612(a)(1)(D). After a worker returns from leave, the worker is entitled to be reinstated to her previous position or an equivalent one. *Id.* § 2614(a)(1).

A "serious health condition" is one that involves inpatient care in a hospital or "continuing treatment by a health care provider." *Id.* § 2611(11). In its implementing regulations, the Department of Labor defines "[c]ontinuing treatment by a health care provider" to include "chronic serious health condition[s]" that (i) "[r]equire[] periodic visits (defined as at least twice a year) for treatment by a health care provider," (ii) "[c]ontinue[] over an extended period of time," and (iii) "[m]ay cause episodic rather than a continuing period of incapacity (e.g., asthma, diabetes, epilepsy, etc.)." 29 C.F.R. § 825.102.

Prior to taking leave, an employee must give her employer notice of the request for leave, "stat[ing] a qualifying reason for the needed leave." *Id.* § 825.301(b). An employer may require its employees to support their requests

6

for leave with a certification issued by a health care provider. 29 U.S.C. § 2613(a). A "sufficient" medical certification must state (1) the date on which the serious health condition began, (2) the probable duration of the condition, (3) relevant medical facts, (4) a statement that the employee is unable to perform the functions of her position, (5) the dates and duration of any planned medical treatment, and (6) the expected duration of the intermittent leave. *Id.* § 2613(b).

Significantly, the Department of Labor's regulations govern how employers are to respond to perceived deficiencies in medical certifications. An employer "shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient." 29 C.F.R. § 825.305(c). A certification is "incomplete" if the "employer receives a certification, but one or more of the applicable entries have not been completed." *Id.* A certification is "insufficient" if the "employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive." *Id.* If the employer determines that a certification is either incomplete or insufficient, it may deny the requested leave on the basis of an inadequate certification. But it may only do so if it has "provide[d] the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency." *Id.*; *see Hansen v. Fincantieri Marine Grp., LLC*, 763 F.3d 832, 837 (7th Cir. 2014) ("[T]he regulations do not authorize the employer to deny FMLA leave where the employee fails to provide a complete and sufficient certification but is not given the opportunity to cure the deficiency.").

7

A.

Hansler's first claim is that Lehigh Valley interfered with her rights under the Medical Leave Act by failing to afford her a chance to cure deficiencies in her medical certification. This claim is based on statutory text providing that employers may not "interfere with, restrain, or deny the exercise of or attempt to exercise" rights granted under the Act. 29 U.S.C. § 2615(a)(1). Moreover, "[a]ny violations of the Act or of these regulations constitute interfering with" the exercise of an employee's rights. 29 C.F.R. § 825.220(b). To assert an interference claim, an employee must establish, among other things, that she was denied benefits under the Act. *Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014).

The District Court held that Hansler was not entitled to leave or a cure period because her certification was "invalid" and "negative on its face." The Court reasoned that while Hansler's certification requested leave for one month, this was not an "extended period of time," and, therefore, her condition did not qualify as a chronic serious health condition. In other words, her certification was not merely insufficient or incomplete—it demonstrated that she did not have a chronic serious health condition.

Hansler does not argue on appeal that her certification established the "extended period of time" requirement, and we do not decide that issue here.[3] Instead, Hansler maintains

_____

[3] A chronic serious health condition is one that, among other things, "[c]ontinues over an extended period of time." 29

8

she was entitled to the cure period set forth in the regulations because the certification was insufficient, rather than negative on its face. We agree.[4]

---

C.F.R. § 825.102. Neither the Act nor the regulations provide further clarity as to what "extended period of time" means. We have found that a three-year duration for an employee's condition constitutes an extended period of time. *See Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 189 (3d Cir. 1997). Other courts have held that chronic illnesses "must exist for well more than a few weeks." *Taylor v. Autozoners, LLC*, 706 F. Supp. 2d 843, 852 (W.D. Tenn. 2010) (quoting *Flanagan v. Keller Prods., Inc.*, No. 00-542-M, 2002 WL 313138, at *7 (D.N.H. Feb. 25, 2002)). We will assume here, and Hansler does not argue otherwise, that a condition lasting for one month does not satisfy the "extended period of time" requirement.

[4] Our decision that the certification Hansler's doctor submitted is "insufficient" under 29 C.F.R. § 825.305(c) does not mean, as the dissent contends, that "you will now be able to maintain an interference claim against your employer regardless of your condition when you request leave if you claim that your diagnosis changed or was not finalized until after you submitted the request." Nor does it mean that the "employer who denies a leave request is at risk of an interference claim." It does mean that when a certification submitted by an employee is "vague, ambiguous, or non-responsive," the employer must, under 29 C.F.R. § 825.305(c), provide the employee an opportunity to cure the deficiency within seven days.

9

The regulations make no reference to negative certifications, the basis on which the District Court rejected Hansler's claim. Instead, they provide that whenever an employer finds a certification "incomplete" or "insufficient," the employer shall so advise the employee and provide seven days to cure the deficiencies. 29 C.F.R. § 825.305(c). A negative certification is a judicially crafted concept with roots in a decision from the Seventh Circuit Court of Appeals. *See Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309 (7th Cir. 1998). In *Stoops*, the employee's physician provided a medical certification stating that the employee was "not presently incapacitated and would not have to work intermittently or on a reduced work schedule." *Id.* at 311. The Seventh Circuit described this as a "negative certification" because a serious health condition is one that prevents an employee from performing his job, but the employee's physician in *Stoops* explicitly stated that the employee could perform his job functions. *Id.* at 312-13. "Where an employer . . . requests from the employee and receives a physician's certification that indicates that an employee's serious health condition does not require him to miss work, the employer may rely on that certification." *Id.* at 313.

Following *Stoops*, several other Courts of Appeals have discussed or alluded to negative certifications. In *Hoffman v. Professional Med Team*, the employee, like the one in *Stoops*, submitted a certification from a physician stating she would not need to work intermittently or on a less-than-full schedule as a result of her condition. *Hoffman*, 394 F.3d 414, 416 (6th Cir. 2005). The Sixth Circuit explained that, "[t]o be valid, a certification must show that the employee's serious health condition makes her unable to perform job functions." *Id.* at 419. In *Branham v. Gannett*

10

*Satellite Information Network, Inc.*, the Sixth Circuit referred to a negative certification as one "indicating that [the employee] does not have a serious health condition that prevents her from performing her job." 619 F.3d 563, 572 (6th Cir. 2010). Similarly, the First Circuit found that an employer was justified in denying leave where the medical certification stated that the employee was "not incapacitated" and "disavowed the need for any leave." *Tayag v. Lahey Clinic Hosp., Inc.*, 632 F.3d 788, 793 (1st Cir. 2011).

We need not decide whether in certain circumstances a medical certification may be negative because, even if we were to agree with the cases finding negative certifications, we still would not find those cases persuasive here. The certifications in those cases contained affirmative statements from the employees' physicians that the employees would not miss any work, which, by definition, meant they did not have "serious health condition[s]." *See* 29 U.S.C. § 2612(a)(1)(D). Although the First, Sixth, and Seventh Circuits appear to agree that "employers have no responsibility to conduct further investigation when a certification is invalid on its face," the cases discussing negative certifications offer little guidance to a court (or employer) confronting an ambiguous or non-responsive certification. *Hoffman*, 394 F.3d at 418-19.

Hansler's certification does not contain a statement from her physician saying that she would not miss any work. Instead, her certification "request[s] intermittent leave at a frequency of 2 times weekly . . . and lasting for a probable duration of one month." App. 44. Hansler's certification is "insufficient" under the regulations because it is "vague, ambiguous, or non-responsive." 29 C.F.R. § 825.305(c). As we discussed earlier, a sufficient medical certification must

state, among other things, both the probable duration of the condition and the expected duration of the intermittent leave. 29 U.S.C. § 2613(b). Hansler's certification is vague and non-responsive insofar as it requests intermittent leave for one month but fails to specify whether the one month duration refers only to the length of her leave request or to the duration of her condition.[5] As alleged in the complaint, the certification seems to refer only to the duration of her leave request because the certification does not even mention a condition, let alone its duration. *See Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 886-87 (7th Cir. 2005) (rejecting argument that certification was negative where physician omitted the incapacity's expected duration). In light of the mandatory language in the regulations instructing employers to advise their employees of vague, ambiguous, and non-responsive certifications, we see no need to comment in this case on the narrow category of certifications deemed negative.

Lehigh Valley's additional arguments in support of a negative certification are unavailing. It emphasizes that the

---

[5] Lehigh Valley maintains that Hansler waived her argument concerning a distinction between the length of the requested leave and the expected duration of her condition by not raising it before the District Court. *See Brennan v. Norton*, 350 F.3d 399, 415 n.12 (3d Cir. 2003). We disagree. Although Hansler did not mention this nuance in 29 U.S.C. § 2613(b), she did argue generally, with a supporting case and citations to regulations, that her certification was insufficient and that Lehigh Valley should have given her a chance to cure. Accordingly, Hansler has preserved the issue for appeal.

Medical Leave Act is not a forward-looking statute and "does not require an employer to be clairvoyant." *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 303 (3d Cir. 2012) (internal citations and quotation marks omitted). According to Lehigh Valley, the short duration of Hansler's symptoms prior to her leave request provided no basis for it to know that Hansler was suffering from a prolonged and chronic illness. This argument would carry more force if the issue at stake was notice. *See Ross*, 755 F.3d at 191-92 (explaining that to state a claim for interference, a plaintiff must give notice to the defendant of his or her intention to take leave). But no one disputes notice; Hansler provided Lehigh Valley with a certification specifically requesting leave under the Act. Thus, nothing in this opinion burdens employers with the troublesome task of predicting, on their own, the nature and trajectory of their employees' illnesses. The relevant question here is not whether Lehigh Valley could have known Hansler was suffering from a chronic condition at the time she requested leave; instead, it is whether the certification was insufficient and/or incomplete. Receipt of an insufficient or incomplete certification triggers certain regulatory obligations on an employer that are unrelated to its understanding of the employee's health condition.

Similarly, Lehigh Valley maintains that Hansler's post-termination diagnoses of diabetes and high blood pressure foreclose her ability to establish that she had a chronic serious health condition at the time she requested leave. *See Navarro v. Pfizer Corp.*, 261 F.3d 90, 96 (1st Cir. 2001) (explaining that operative time for determining whether a particular condition qualifies as a serious health condition is the time that leave is requested or taken). Again, this misses

13

the point. That Hansler was diagnosed with her illnesses after she was fired does not affect the determination of whether her medical certification was insufficient.

Having concluded that Hansler plausibly alleges her certification was insufficient rather than negative, the next question is whether she states a claim for interference under the Act. Upon receipt of her insufficient certification, Lehigh Valley was required to (1) advise Hansler that her certification was insufficient, (2) state in writing what additional information was necessary to make it sufficient, and (3) provide her with an opportunity to cure before denying her request for leave. *See* 29 C.F.R. § 825.305(c). Lehigh Valley ignored these requirements and, instead, terminated Hansler without first notifying her that the request for leave had been denied. Hansler may premise her interference claim on these alleged regulatory violations.

Though our Court has not yet ruled on this issue, several district courts in this circuit have found interference claims following an employer's breach of its obligations under § 825.305.[6] The few relevant decisions from the Courts

---

[6] *See Patel v. Saint Vincent Health Ctr.*, No. 12-298, 2015 WL 630260, at *13 (W.D. Pa., Feb. 12, 2015) ("[Employer] interfered with Plaintiff's FMLA rights by not informing her that the certification submitted by [the physician] was incomplete and insufficient."); *Herco v. Se. Pa. Transp. Auth.*, No. 10-796, 2011 WL 294493, at *3 (E.D. Pa. Jan. 25, 2011) (finding interference claim based on employee's submission of an incomplete medical certification and employer's failure to request additional information);

of Appeals suggest that employees who allege harm arising from the employers' failure to provide a cure period may assert a cause of action for interference. *See Kauffman*, 426 F.3d at 886-87; *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005).

Moreover, we find support for an interference claim based on this Court's precedent concerning notice interference. In *Conoshenti v. Public Service Electric & Gas Co.*, the plaintiff's claim was based on his employer failing to advise him of his substantive rights under the Act in violation of regulatory requirements.[7] 364 F.3d 135, 142 (3d Cir. 2004). The plaintiff there insisted that, if he had received the necessary information, "he would have been able to make an informed decision about structuring his leave and would have structured it, and his plan of recovery, in such a way as to preserve the job protection afforded by the Act." *Id.* at 142-

---

*Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F. Supp. 2d 455, 466 (D.N.J. 2001) ("[T]ermination is not an appropriate response for an inadequate certification. [The regulations] provide[] that where an employer finds a certification incomplete, it must give the employee a reasonable opportunity to cure any deficiencies.").

[7] The regulations contain a number of provisions requiring employers to provide employees with notice of their rights and obligations. *See generally* 29 C.F.R. § 825.300. For example, an employer covered by the Act must include a notice in its employee handbooks explaining benefits and leave rights. *Id.* § 825.300(a)(3).

43. We held this was a viable theory of recovery, explaining that the plaintiff "will show an interference with his right to leave under the FMLA . . . if he is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury." *Id.* at 143. Put another way, we found a cause of action for notice interference in the event plaintiff was able to show prejudice as a result of the violation. *Id.* at 144; *see also Ruder v. Pequea Valley Sch. Dist.*, 790 F. Supp. 2d 377, 394 (E.D. Pa. 2011) (finding interference claim where the defendant's failure to advise plaintiff of his eligibility to take leave "rendered him unable to exercise his rights"); *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp. 2d 490, 496-97 (E.D. Pa. 2010) (finding interference claim where plaintiff alleged that "had she been informed that FMLA was an option for her absence, she would have taken her absence as FMLA leave").

The logic of *Conoshenti* naturally extends to an employer's failure to comply with its regulatory obligations following receipt of an insufficient or incomplete medical certification. Just like employers must advise their employees of their rights under the Act, 29 C.F.R. § 825.300, they also must advise their employees of deficiencies in their medical certifications and provide them with an opportunity to cure, *id.* § 825.305(c). These modest burdens imposed on employers help ensure that employees are equipped with at least basic information about the Act's requirements and have an opportunity to exercise their rights in a meaningful way. And to encourage employer compliance, the regulations provide injured employees with a cause of action for interference. *See* 29 C.F.R. § 825.220(b) ("Any violations of the Act or of these regulations constitute interfering with,

16

restraining, or denying the exercise of rights provided by the Act."). If we were to find otherwise, employees would be left without a remedy.

Based on the facts alleged in the complaint, we conclude that Hansler states a claim for interference under 29 U.S.C. § 2615(a)(1). She alleges that, in violation of the regulations, Lehigh Valley failed to identify deficiencies in her medical certification and failed to provide her with an opportunity to cure. Hansler alleges she was prejudiced by these failures because, "[h]ad [Lehigh Valley] properly requested that [her] physician provide more information to show a serious health condition, [her] physician would have been [in] a position to provide the full diagnosis of [her] chronic health conditions." App. 45. Instead of having the chance to exercise her rights in a meaningful way and demonstrate her entitlement to leave, Lehigh Valley fired her. As such, Hansler sufficiently alleges she was prejudiced as a result of Lehigh Valley's regulatory violations. Indeed, Lehigh Valley does not appear to dispute a finding of prejudice, instead focusing its efforts on arguing that Hansler was not entitled to a cure period in the first instance—an argument we have rejected. Appellee Br. at 8 ("While it may be true that, had Hansler been given more time, she would have been able to offer additional information, this simply is not relevant to whether Hansler was entitled, under the FMLA regulations, to a cure period.").

Not only is our conclusion dictated by precedent as well as the statutory and regulatory text, but we believe the cure period makes abundant sense in this context. Faced with nascent symptoms from a yet-to-be diagnosed condition, an employee's physician may need some additional time to

17

provide the required elements of a sufficient certification, including more specific information regarding relevant medical facts and the probable duration of the condition, the planned medical treatment, and the intermittent leave. 29 U.S.C. § 2613(b). As this case illustrates, for an employee with an emerging condition, the difference between a medical certification that supports leave and one that is deficient might be a matter of days.

B.

Hansler's second claim is that Lehigh Valley terminated her in retaliation for seeking leave. Retaliation claims arise out of the Medical Leave Act's prohibition on employers "discharg[ing] or in any other manner discriminat[ing] against any individual for opposing any practice made unlawful." 29 U.S.C. § 2615(a)(2); *see* 29 C.F.R. § 825.220(c) (prohibiting employers from "discriminating or retaliating against an employee or prospective employee for having exercised or attempt[ing] to exercise FMLA rights"). To state such a claim, Hansler must allege (1) she invoked her right to leave, (2) she suffered an adverse employment decision, and (3) the adverse action was causally related to her invocation of rights. *See Lichtenstein*, 691 F.3d at 301-02.

The District Court dismissed Hansler's retaliation claim, finding she did not make a "valid" request for leave. This conclusion flowed from our holding that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). The District Court

18

reasoned that because her leave request was "premised upon the existence of a serious chronic health condition and her medical certification was a negative certification with respect to such a condition, [Hansler's] leave request was not a valid request entitling her to FMLA leave and, accordingly, may not form the basis for an FMLA retaliation claim." *Hansler*, 2014 WL 1281132, at *13.

As we disagree with the underpinnings of this conclusion—*i.e.*, the certification was negative and Hansler was not entitled to benefits under the Act—we hold that Hansler's claim should not be dismissed at this stage. Hansler alleges she attempted to invoke her right to leave, she was not advised of deficiencies in her medical certification, she was not provided a cure period, and she was fired a few weeks later as a result of her leave request. Through discovery, Hansler might be able to show that Lehigh Valley had a retaliatory motive and that the stated reason for termination was pretextual. *See Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 325-26 (3d Cir. 2014); *Lichtenstein*, 691 F.3d at 309-10.

## III.

For the foregoing reasons, we reverse the order of the District Court and remand for further proceedings consistent with this opinion.

ROTH, <u>Circuit Judge</u>, dissenting:

The majority fashions a new rule to fit a sad case. In early April of 2013, Deborah Hansler was diagnosed with diabetes and high blood pressure. Had these conditions been diagnosed just days earlier when Hansler applied for FMLA leave, she would have been entitled to medical leave under the Family and Medical Leave Act[1]—ensuring her time to treat her illness and a position upon her return. Instead, Hansler was denied leave and terminated from her job at Lehigh Valley. While I too sympathize with Hansler's situation, I cannot subscribe to the majority's strained re-interpretation of the FMLA.

When an employer receives a request for FMLA leave, the decision on whether to grant that leave depends on the factual situation presented to the employer at the time that the leave is requested. The "crucial moment for determining if a particular condition qualifies" for FMLA leave "is the time that leave is requested or taken."[2] Here, Hansler requested "intermittent leave at a frequency of 2 times per week" for one month based on her suffering from shortness of breath, nausea, and vomiting during the previous two weeks.[3]

---

[1] 29 U.S.C. § 2601, *et seq.*

[2] *Navarro v. Pfizer Corp.*, 261 F.3d 90, 96 (1st Cir. 2001); *see Yansick v. Temple Univ. Health Sys.*, No. 04-4228, 2006 WL 2243178, at *13 n.26 (E.D. Pa. July 27, 2006) ("[W]e must determine whether any medical evidence shows that, at the time of Plaintiff's absence, the specified condition actually prevented him from working.").

[3] *See* A.44 ¶¶ 6-7. Notably, at oral argument, Lehigh Valley's counsel stated that Hansler's doctor described her as suffering

1

Hansler's medical certification accurately reflected her condition at the time of her request. This condition did not, however, qualify her for FMLA leave. This is not a case of a deficient certification that omitted necessary information. It is simply a case of a certification that describes a condition that is not one for which FMLA leave can be awarded.

The reader may respond, "Well, let's not penalize the poor lady for applying too early for leave – for applying before her physician had diagnosed diabetes. Let's let her clear up any short fall in the information she gave her employer by permitting her to correct her deficiencies pursuant to 29 C.F.R. § 825.305(c)." The problem with this solution is that the employer in good faith, with the completed form and the information on it, has denied FMLA leave because the employee was not qualified for it. There was no indication on the certification of the health care provider that one or more of the applicable entries had not been completed and there was no information that was vague, ambiguous, or non-responsive. The certificate was not rejected by the employer as incomplete or insufficient. FMLA leave was denied because the completed certificate did not present grounds to grant FMLA leave. In this situation, there is no statutory right to cure by presenting further information within seven days. The employer here should not be penalized for denying leave when the complete and unambiguous request for leave did not present grounds for leave.

---

from "cold symptoms." *See* Oral Arg. at 18:10-20. Although Hansler was later diagnosed with a more serious condition, Lehigh Valley had no reason to be aware of this later diagnosis when leave was denied.

2

I urge that the employer not be penalized for denying the original request for FMLA leave when it was properly denied on the face of the request. If interference with FMLA leave can be found in a case like this one, the employer, through no fault of its own, can be penalized by being held liable for damages (i) in the amount of "wages, salary, employment benefits, or other compensation denied or lost . . . by reason of the violation" or, if not so denied or lost, then the amount of "actual monetary losses sustained . . . as a direct result of the violation" up to the sum of 12 weeks of wages or salary for the employee, (ii) interest, and (iii) liquidated damages equal to the amounts in clauses (i) and (ii).[4] An employee is also entitled to any appropriate equitable relief such as "employment, reinstatement, and promotion,"[5] and "reasonable attorney's fee, reasonable expert witness fees, and other costs of the action."[6] Hansler is attempting to take full advantage of these remedies by seeking "lost pay, lost bonuses, lost benefits, other financial losses, liquidated damages, . . . attorneys fees, costs, interest, reinstatement of employment, and any other [fair and proper] relief."[7]

The majority goes to great lengths to conclude that Hansler was entitled to time to cure any deficiencies in her medical certification and that Lehigh Valley's failure to provide that opportunity may form the basis of an interference

---

[4] *See* 29 U.S.C. § 2617(a)(1)(A)(i)-(iii).

[5] *See id.* § 2617(a)(1)(B).

[6] *See id.* § 2617(a)(3).

[7] Hansler also seeks damages for pain and suffering and punitive damages, but neither is authorized under the statute.

3

claim. Yet nowhere does the opinion address whether Hansler was actually entitled to FMLA leave. Curiously, the majority assumes that the information provided in Hansler's certification did *not* satisfy the FMLA's requirements.[8] There can be no interference, however, if Hansler was not entitled to leave in the first place.[9]

While Hansler's physician may have needed additional time to diagnose her condition as diabetes, nothing in the FMLA provides for such a grace period. Admittedly, the FMLA requires that employers provide employees with seven calendar days to cure deficiencies in their medical certifications.[10] The purpose of this provision, however, is to clarify the information provided in a certification, not to provide time to discover a yet-to-be diagnosed condition.[11]

---

[8] *See* Maj. Op. at 8 n.3.

[9] *See Sommer v. Vanguard Grp.*, 461 F.3d 397, 399 (3d Cir. 2006) ("To assert an interference claim, 'the employee . . . needs to show that [s]he was entitled to benefits under the FMLA and that [s]he was denied them.'" (quoting *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005))); *accord Darst v. Interstate Brands Corp.*, 512 F.3d 903, 910 (7th Cir. 2008) ("Because [plaintiff] cannot demonstrate that he was actually entitled to FMLA leave, [the employer's] breach of its duty to offer him an opportunity to cure deficiencies caused him no harm, and he may not recover for that breach under the FMLA.").

[10] *See* 29 C.F.R. § 825.305(c).

[11] *See* 73 Fed. Reg. 67934, 68062 (Nov. 17, 2008) ("Providing more [cure] time will reduce mistakes and provide greater certainty in the workplace, and this typically benefits both workers and employers."); 60 Fed. Reg. 2180,

4

According to the majority, Hansler's certification was "vague, ambiguous, or non-responsive" because it "does not even mention a condition, let alone its duration."[12] The majority, however, reads into the Second Amended Complaint facts that Hansler never alleged. Hansler merely alleged that her physician requested intermittent leave "lasting for a probable duration of one-month or until about April 1, 2013."[13] She does not allege that her physician omitted her then-condition or its duration.[14] Even construing the complaint in the light most favorable to Hansler, she still must allege facts suggesting that her certification was incomplete, vague, ambiguous, or non-responsive. She did not.

Ultimately, the issue is who bears the burden when an employee has an undiagnosed condition. The majority tasks employers with this novel burden, deeming it irrelevant "whether Lehigh Valley could have known Hansler was suffering from a chronic condition at the time she requested

---

2258 (Jan. 6, 1995) ("The employer shall advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency.").

[12] *See* Maj. Op. at 11-12.

[13] *See* A.44 ¶ 7.

[14] In fact, she never even argued before the District Court that her physician omitted the duration or condition in the certification; rather, she claimed that her certification was "insufficient" because her future diagnosis was not yet known. *See* S.A. 25-27.

5

leave."[15]  This construction is not tethered to the statute's text, which places the burden on employees to demonstrate that they qualify for leave and permits employers to require that a leave request be supported by a medical certification. The majority's conclusion that employers may not then reasonably rely on that information makes little sense. I would hold that where, as here, an employer has no basis for concluding that an employee has a current, serious health condition under the FMLA, it may deny the leave request. Such a denial is not interference.

Going forward under the Majority's rule, you will now be able to maintain an interference claim against your employer regardless of your condition when you request leave if you claim that your diagnosis changed or was not finalized until after you submitted the request. This is true for even the most frivolous leave requests. Indeed, following the Majority, as long as the "certification does not contain a statement from [your] physician saying that [you] would not miss any work," the employer who denies a leave request is at risk of an interference claim.[16]  For lawyers seeking attorneys' fees under the FMLA,[17] this message will sound loud and clear.

---

[15] *See* Maj. Op. at 12.

[16] *See* Maj. Op. at 10.

[17] *See* 29 U.S.C. § 2617(a)(3).