NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3001
_____

LACHELLE WATSON,
Appellant

v.

DREXEL UNIVERSITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-1027)
District Judge:  Hon. Eduardo C. Robreno
_____

Argued
May 13, 2021

Before:  McKEE, JORDAN, and FUENTES, *Circuit Judges.*

(Filed: September 27, 2021)
_____

Graham F. Baird   [ARGUED]
Law Offices of Eric A. Shore
1500 John F. Kennedy Blvd., Ste. 1240
Philadelphia, PA   19102
        *Counsel for Appellant*

Charlene A. Baker Gedeus   [ARGUED]
Joseph J. Centeno
Buchanan Ingersoll & Rooney
50 South 16th St. – Suite 3200
Philadelphia, PA   19102
        *Counsel for Appellee*

_____

OPINION[*]

_____

JORDAN, *Circuit Judge*.

Lachelle Watson was terminated from her position with Drexel University due to what Drexel considered to be unapproved absences. Those absences were related to a chronic medical condition of Watson's. She sued Drexel for interference with her rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, for failure to reinstate her under the FMLA, *id.*, and for failure to accommodate her needs as required by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 *et seq.* The District Court granted summary judgment for Drexel, and we will affirm.

## I.    BACKGROUND

Watson was employed as a custodian at Drexel when, in May 2016, she was diagnosed with leiomyoma, a condition characterized by anemia and painful uterine fibroids. She advised Drexel's Director of Custodial and Support Services, Daryl Carlton, that she needed to take some time off from work to care for her health. Carlton told Watson that she could apply for FMLA leave and directed her to contact Human Resources for more information. Watson did not have any further conversations with Carlton about her medical issues, but she said that he probably would have helped her if

_____

[*] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

2

she needed additional assistance.  Aside from that one conversation, Watson said that she hid her medical condition "pretty well" and "didn't let anybody know what was going on."  (App. at 133.)

After speaking with Human Resources, Watson sought FMLA leave for the first time in June 2016.  She had her physician properly complete the required medical certification, and she submitted it to the Guardian Life Insurance Company of America ("Guardian"), Drexel's designated insurance carrier for handling FMLA requests.  In a letter dated August 11, 2016, Guardian approved her for FMLA leave through August, and she later successfully sought an extension through October 17, 2016.

Watson subsequently had difficulty with her FMLA requests.  First, she wanted leave from October 18 to November 30, but, in the August 31, 2016 letter Guardian sent her, it said that she was eligible – not approved – for a further extension for that period. Watson testified that she was aware that being "eligible" did not mean that she was approved for the extension.  The letter informed her that "additional information and/or certification may be required" for approval of an extension.  (App. at 259.)  It also directed her to an enclosed blank certification form, which stated: "The FMLA requires that you submit a timely, complete and sufficient medical certification to support a request for FMLA [leave] due to your ... serious health condition."  (App. at 260.) Having not received the recertification, Guardian sent Watson a letter on November 9,

2016, alerting her that her FMLA leave request for October 18 through November 30 was denied.[1] Watson nevertheless continued to take leave after receiving that letter.

Next, Watson requested FMLA leave from December 1, 2016 through May 31, 2017. On January 11, 2017, Guardian notified Watson that she was eligible for FMLA leave for that time period but did not enclose a blank medical recertification form or tell her that she must submit a completed one. On January 31, Guardian sent Watson a letter denying her request for failure to return a recertification. On February 10, Watson's physician submitted a certification form for the leave, but it was incomplete. On February 28, Guardian sent Watson a letter advising her that the certification was incomplete, enclosing a blank certification form, and instructing her to "fill out the form, taking care to include the data listed as incomplete" and to return it within seven days. (App. at 290.) She did not. Having not received a fully completed recertification form, Guardian advised Watson on March 13 that her request for leave was denied.[2] Still, she continued to take leave.

Months later, on May 18, 2017, Watson had a new doctor submit a recertification form. This time, the form was correctly filled out, and Guardian approved her request for FMLA leave from May 18 to May 31, 2017.

In late 2017, Watson was notified that her employment was terminated. She sued and in her Second Amended Complaint alleged claims for interference with FMLA

---

[1] Guardian later adjusted that denial period to begin on November 2, 2016

[2] Guardian later changed that denial period to end on May 17, 2017.

4

rights, failure to reinstate her under the FMLA, and for failure to accommodate and disability discrimination under the ADA and the PHRA. The District Court subsequently granted Drexel's motion for summary judgment, holding that "Watson does not point to record evidence sufficient for a reasonable jury to find that Drexel failed to provide Watson with adequate notice of the certification requirements or otherwise interfered with Watson's exercise of her FMLA rights." (App. at 22.) It held that "Drexel made a good-faith effort to assist Watson, including by engaging in the interactive process[,]" thus defeating her ADA and PHRA failure-to-accommodate claims. (App. at 14.) The Court also granted summary judgment to Drexel on the disability discrimination claims. Watson has timely appealed.

## II.    DISCUSSION[3]

### A.    The District Court did not err in granting Drexel summary judgment on Watson's FMLA interference claim.

Watson contends that Drexel interfered with her rights under the FMLA by erroneously denying her FMLA leave despite her eligibility. Drexel, of course, takes the

---

[3] The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of a district court's grant of summary judgment is plenary. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017). A moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps*, 847 F.3d at 151 (citation omitted). "All reasonable inferences must be drawn in favor of the nonmoving party." *Id.*

contrary position. With sincere regret for Watson's circumstances, we must agree with Drexel.

Watson had to demonstrate that she was entitled to FMLA leave. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 155 (3d Cir. 2017).[4] To be so entitled, employees must adhere to the Department of Labor's regulations. *See* 29 C.F.R. § 825.305(d). Those regulations permit an employer to require that its employees "support their requests for leave with a certification issued by a health care provider" and "obtain subsequent recertifications on a reasonable basis." *Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 153 (3d Cir. 2015) (citation omitted); 29 U.S.C. § 2613(e).

In most circumstances, the employee "must provide the requested certification to the employer within 15 calendar days after the employer's request[.]" 29 C.F.R. § 825.305(b). Drexel's FMLA policy explains that "[f]ailure to provide requested medical certification will result in denial of the request." (App. at 91.) *See* 29 C.F.R. § 825.313(c). Thus, if the employee does not provide a certification, "the leave is not FMLA leave." *Id.*

The Department of Labor also places certain regulations on employers, to prevent interference with an employee's FMLA rights. For example, notice from an employer

---

[4] "To make a claim of interference under the FMLA, a plaintiff must establish: (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA." *Capps*, 847 F.3d at 155. Drexel argues that Watson's claim cannot survive the third prong.

that a medical recertification is required must "detail[ ] the specific expectations and obligations of the employee and explain[ ] any consequences of a failure to meet these obligations." *Id.* § 825.300(c). Furthermore, notice that a certificate is required must be provided to the employee "each time the eligibility notice is provided[.]" *Id.* Finally, if a certification is considered insufficient, "[t]he employer must provide the employee with seven calendar days … to cure any such deficiency." *Id.* § 825.305(c). "Failure to follow the notice requirements … may constitute an interference with, restraint, or denial of the exercise of an employee's FMLA rights." *Id.* § 825.300(e). Even if the employer fails to follow the Department of Labor regulations, however, the FMLA "provides no relief unless the employee has been prejudiced by the violation[.]" *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002); *see* 29 U.S.C. § 2617(a)(1)(A)(i)(I) ("Any employer who violates section 2615 of this title shall be liable to any eligible employee affected for damages equal to the amount of any … compensation denied or lost to such employee *by reason of the violation*[.]" (emphasis added)).

Here, the record shows that Watson received FMLA leave when she sent completed medical certification forms with her initial application and extension requests. She had no issues using her FMLA leave during those periods. She was denied FMLA leave, however, for the periods from November 2 to November 30, 2016 ("First Denial Period") and December 1, 2016 to May 17, 2017 ("Second Denial Period").

### 1. First Denial Period

Drexel properly denied Watson FMLA leave for the First Denial Period because it requested medical recertification in its August 31, 2016 letter and Watson did not timely

7

provide that recertification. *See* 29 C.F.R. § 825.305(d). The August 31 letter directed Watson to an enclosed blank certification form that stated: "The FMLA requires that you submit a timely, complete and sufficient medical certification to support a request for FMLA due to your … serious health condition." (App. at 259-60.) The letter stated that Watson was eligible for FMLA leave, and she knew that eligibility did not mean that her request for an extension was approved.[5] That letter provided adequate written notice that recertification was required. Drexel, through Guardian, was thus within its rights to deny Watson's extension request on November 9, which was well past the fifteen-day recertification deadline. *See* 29 C.F.R. § 825.305(b).

### 2. *Second Denial Period*

While Drexel initially was mistaken in the steps taken to deny Watson FMLA leave for the Second Denial Period, it remedied that error. The January 11, 2017 notice of recertification did not comply with the Department of Labor regulations because it did not state the "specific expectation[ ]" that Watson had to return a new medical recertification and it failed to include a blank form.[6] 29 C.F.R. § 825.300(c)(1). Thus, on January 31, Drexel improperly denied Watson's extension request. *See id.* § 825.300(e).

---

[5] Watson argues that she "was eligible and entitled to literally hundreds of hours of FMLA leave which Drexel prevented her from using." (Opening Br. at 10 (citing App. at 259).) That argument conflates her hours of leave remaining under FMLA – *if approved* – with the time periods in which she was approved. In the very same August 31 notice, Guardian explained that "[a]lthough you meet the eligibility requirements for the above leave(s), additional information and/or certification may be required[.]" (App. at 259.) It is therefore inaccurate to describe Watson as entitled to hundreds of hours of FMLA leave.

[6] At oral argument, Drexel conceded that the January 11 notice did not comply

8

That wrongful denial, however, was not irremediable; Congress, in enacting the FMLA, did not intend "[t]echnical rules and burdensome administrative requirements … [to] impose unforeseen liabilities and discourage employers from adopting policies that [are more generous to employees than] the basic federal requirements." *Ragsdale*, 535 U.S. at 95. Permitting Drexel to remedy its previously noncompliant notice, and thus allowing Watson another chance to submit the required medical documentation, serves the stated purposes of the FMLA. *See Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140-41 (3d Cir. 2004) ("The stated purposes of the FMLA are to 'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons.'" (quoting 29 U.S.C. § 2601(b)(1)-(2)).

Drexel did attempt to remedy its previously noncompliant notice by considering Watson's subsequent medical recertification, submitted on February 10. In addition, Drexel provided her an opportunity to cure that February 10 recertification form, as her doctor had filled it out improperly. If Watson had submitted a sufficient recertification form, or if she had cured the improper form within the regulatory deadline of seven days, Watson could have obtained an extension of her FMLA leave through the Second Denial Period. *See* 29 C.F.R. § 825.305(c). Thus, she cannot show "prejudice as a result of [Drexel's] violation[,]" *Hansler*, 798 F.3d at 157, and her FMLA claim fails.

---

with the Department of Labor regulations. (See audio recording of oral argument held on May 13, 2021 at 39:40-40:06 (https://www2.ca3.uscourts.gov/oralargument/audio/20-3001_Watsonv.DrexelUniversity.mp3 ).)

**B.     The District Court did not err in granting summary judgment on Watson's ADA and PHRA failure-to-accommodate claims.**

Watson also contends that Drexel failed to accommodate her disability as required by the ADA and the PHRA,[7] by failing to engage in the required interactive process.[8] Her argument is unavailing.

To prevail on an ADA failure to accommodate claim, Watson must establish: "(1) [s]he was disabled and [her] employer knew it; (2) [s]he requested an accommodation or assistance; (3) [her] employer did not make a good faith effort to assist; and (4) [s]he could have been reasonably accommodated." *Capps*, 847 F.3d at 157 (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). We have held that "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA[.]" *Id.* at 156-57; *see* 29 C.F.R. § 825.702(c)(2). Moreover, "both parties have a duty to assist in the search for appropriate reasonable accommodation and to act in good faith" as part of the interactive process to determine the appropriate accommodation. *Taylor v. Phoenixville Sch. Dist.*,

---

[7] "The PHRA and the ADA are 'basically the same … in relevant respects and "Pennsylvania courts … generally interpret the PHRA in accord with its federal counterparts.""" *Buskirk v. Apollo Metals*, 307 F.3d 160, 166 n.1 (3d Cir. 2002) (omissions in original) (quoting *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002)).

[8] Watson does not argue in support of her disability discrimination claim on appeal, besides reciting the law on a prima facie case of discrimination. Thus, she has forfeited that claim. *See Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 147 (3d Cir. 2017).

184 F.3d 296, 312 (3d Cir. 1999) (quoting *Mengine v. Runyon*, 114 F.3d 415, 419-20 (3d Cir. 1997)).

Watson's claim fails because she successfully received FMLA leave when she properly and timely returned her medical certifications. She also has not shown that Drexel did not make a good faith effort to assist her. On the contrary, Watson testified that Carlton probably would have helped her if she had asked for additional assistance with her medical condition, but that she instead hid her medical condition "pretty well[.]" (App. at 405, 444.) Therefore, any breakdown in the interactive process appears to have come from Watson's side. *See Taylor*, 184 F.3d at 312.

## III.  CONCLUSION

For the foregoing reasons, we will affirm the District Court's order granting summary judgment for Drexel.