**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 23-3074

EPHRIAM RODRIQUEZ,

Appellant

v.

SOUTHEASTERN PENNSYLVANIA
TRANSPORTATION AUTHORITY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 2-20-cv-03262)
District Judge: Honorable Michael M. Baylson

Submitted Under Third Circuit L.A.R. 34.1(a)
September 26, 2024

Before: KRAUSE, BIBAS, and AMBRO, Circuit Judges

Graham F. Baird
Law Offices of Eric A. Shore
1500 John F. Kennedy Boulevard
2 Penn Center, Suite 1240
Philadelphia, PA 19102

          Counsel for Appellant

Alexander V. Batoff
Stevens & Lee
1500 Market Street
Centre Square
East Tower, Suite 1800
Philadelphia, PA 19102

Brad M. Kushner
Stevens & Lee
620 Freedom Business Center
Suite 200
King of Prussia, PA 19406

          Counsel for Appellee

---

## OPINION OF THE COURT

---

AMBRO, <u>Circuit Judge</u>

    SEPTA fired Ephriam Rodriquez from his job as a bus operator after he accumulated too many negative attendance points under the terms of his union's Collective Bargaining

Agreement with SEPTA. It is undisputed that his final absence, on June 8, 2018, was related to a migraine headache, though most of his prior absences were not. On June 26, SEPTA held an informal hearing in which Rodriquez's discharge was recommended. After that meeting, Rodriquez requested leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"), from SEPTA's third-party administrator and visited a physician to obtain paperwork supporting his FMLA claim for migraines. Nonetheless, SEPTA soon held a formal hearing in which his termination was approved.

Rodriquez sued SEPTA in the District Court for the Eastern District of Pennsylvania for retaliation and interference under the FMLA, alleging, respectively, that he was discharged in retaliation for applying for FMLA leave and that SEPTA discouraged or prohibited him from using his FMLA leave. At the conclusion of Rodriquez's case-in-chief, SEPTA moved for Judgment as a Matter of Law under Fed. R. Civ. P. 50(b), arguing, among other things, that Rodriquez had failed to establish that he suffered from a "serious health condition" under the FMLA at the time of his employment and discharge; the Court took the motion under advisement. At the conclusion of trial, the jury rendered a verdict for Rodriquez on the FMLA interference claim and for SEPTA on the retaliation claim, awarding him $20,000 in economic damages. SEPTA timely moved for judgment as a matter of law, and the District Court granted its motion. Rodriquez has appealed.

I

We give a fresh look to the grant of judgment as a matter of law, applying the same standard the District Court would exercise. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153,

1166 (3d Cir. 1993). To assess whether judgment as a matter of law was proper, we ask "'not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find for that party.'" *Valentin v. Crozer-Chester Medical Center*, 986 F. Supp. 292, 298 (E.D. Pa. 1997) (quoting *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993)). We "must view the evidence in the light most favorable to the non-moving party[] and determine whether the record contains the 'minimum quantum of evidence from which a jury might reasonably afford relief.'" *Glenn Distribs. Corp. v. Carlisle Plastics, Inc.*, 297 F.3d 294, 299 (3d Cir. 2002) (quoting *Mosley v. Wilson*, 102 F.3d 85, 89 (3d Cir. 1996)). "[We] may not weigh evidence, determine the credibility of witnesses or substitute [our] version of the facts for that of the jury," but rather may grant a Rule 50 motion only "if upon review of the record, it can be said as a matter of law that the verdict is not supported by legally sufficient evidence." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 691-92 (3d Cir. 1993).

Even under this stringent standard, the Court granted SEPTA's motion properly. To succeed on an FMLA interference claim, an employee must prove that he was entitled to benefits under the FMLA that his employer discouraged or prohibited him from using. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). The parties do not dispute whether SEPTA denied Rodriquez benefits; the only question is whether he was entitled to protections under the FMLA. To prove such an entitlement, he must demonstrate that his migraines were a "chronic serious health condition" as defined in the FMLA and regulations promulgated under it, 29 C.F.R. § 825.102, that he gave appropriate notice of his need to be absent from work, 29

4

C.F.R. § 825.303, and that SEPTA subsequently interfered with his right to unpaid leave, 29 U.S.C. § 2611(11) and 29 C.F.R. § 825.115(c). *See also Sarnowski*, 510 F.3d at 401-02. SEPTA's Rule 50 motion challenged only the first of these elements required by our Circuit: whether Rodriquez had a "chronic serious health condition" at the time his June 8 FMLA leave was taken. *See Hansler v. Lehigh Valley Hosp. Network*, 798 F.3d 149, 156 (3d Cir. 2015) (citing *Navarro v. Pfizer Corp.*, 261 F.3d 90, 96 (1st Cir. 2001) (explaining that the "operative time for determining whether a particular condition qualifies as a serious health condition is the time that leave is requested or taken".))[1]

He did not. The FMLA's regulations outline three criteria for such a condition, the first being that it "[r]equires periodic visits (defined as at least twice a year) for treatment by a health care provider, or by a nurse under [his or her] direct supervision[.]" 29 C.F.R. § 825.115(c). Rodriquez presented no evidence of ever having visited a healthcare provider to treat his migraines before his termination and, apart from his visit to

---

[1] Rodriquez claims that SEPTA failed to preserve this issue, but it plainly did. To repeat, at the close of Rodriquez's case-in-brief, SEPTA made a motion under Fed. R. Civ. P. 50(b) stating that it "moves for judgment as a matter of law on the FMLA interference claim, which is Count I, *on the basis that Mr. Rodriquez did not have a serious health condition at the time of the June 8th, 2018 absence*." App. at 321, 134:10-23 (emphasis added). For this reason, the District Court found Rodriquez's waiver argument "somewhat puzzling" and rejected it. App. at 12-13.

5

obtain FMLA paperwork, no evidence of ever visiting one thereafter. Thus, he failed as a matter of law to show that he had a "chronic serious health condition" on June 8, 2018, and there was no evidence on which the jury could properly find he had one.

Rodriquez's arguments that he did have the requisite condition are unavailing. Rodriquez conceded at trial, and repeats in his opening brief, that the first and only time he visited a healthcare provider for migraines was his visit on July 3, 2018 to get FMLA paperwork. Instead, he treated his condition by drinking ginger root tea, taking Tylenol, and avoiding certain dietary triggers. But he points out that, on July 3, a healthcare provider checked off a box indicating that "the patient [will] need to have treatment visits at least twice per year due to the condition[.]" App. at 393.[2]

This is of no moment. Rodriquez recognized that the information in the form, completed nearly a month after his absence, applied prospectively. To repeat, the "operative time for determining whether a particular condition qualifies as a serious health condition is the time that leave is requested or taken." *Hansler*, 798 F.3d at 156. A patient does not have a "serious health condition" under Section 825.111(c)(1) if he waits to see a healthcare provider until after the relevant absences. *See Isley v. Aker Phila. Shipyard, Inc.*, 275 F. Supp. 3d 620, 634, n.15 (E.D. Pa. 2017) (holding that medical treatment for a heart condition after an employee was

---

[2] We point out an inconsistency on this form: the provider answered "No" to the question of whether Rodriquez would "need to attend follow-up treatment appointments or work part-time or on a reduced schedule because of [his] medical condition[.]" App. at 394.

terminated was irrelevant to the serious health condition inquiry because the "operative timeframe for determining whether a condition qualifies as a serious condition is the time that leave is taken") (citation omitted); *DiSantis v. Morgan Properties Payroll Servs., Inc.*, No. 09-6153, 2010 WL 3606267 (E.D. Pa. Sept. 16, 2010) (rejecting an FMLA claim where an employee submitted a health provider form indicating that later medical evaluation would be required to assess the need for subsequent treatment); *Kauffman v. St. Mary Med. Ctr.*, No. 13-4705, 2014 WL 4682035, at *5 (E.D. Pa. Sept. 22, 2014) (holding, where an employee's treatment occurred after her absence, that she "did not have a 'chronic serious health condition . . . during the relevant time period'") (citations omitted).

\* \* \* \*

For these reasons, we affirm.

7